Stephen L. KEMPINSKI

v.

Le Roy V. GREENE, Regional Operations Director, Post Office Department, 30th and Market Streets, Philadelphia, Pennsylvania.

Civ. A. No. 28144.

United States District Court
E. D. Pennsylvania.

Dec. 7, 1960.

878

Irwin S. Lasky, Philadelphia, Pa., for plaintiff.

Walter E. Alessandroni, U. S. Atty., Mabel G. Turner, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

CLARY, District Judge.

The matter is now before the Court on plaintiff's and defendant's cross motions for summary judgment. Originally scheduled for hearing in this action was a motion of the defendant to dismiss under Rule 12 or, in the alternative, motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

█ After argument on the original motion, counsel for the defendant, the United States Attorney, requested permission to file a supplemental brief, which was granted. Attached to defendant's original brief (Docket Paper No. 4) were several Exhibits, "A" to "G" inclusive, which were not part of the record of the case. Attached to defendant's supplemental brief (Docket Paper No. 5) were additional Exhibits, "H" to "M" inclusive, and the complete document of the original Exhibit "D". Because in a motion for summary judgment these Exhibits could not be considered, as they were not part of the record, the Court called a conference of the attorneys, in the nature of a pre-trial, and as a result of that conference, the parties, through their attorneys, stipulated (Docket Paper No. 6) that the Exhibits attached to defendant's brief and supplemental brief (Docket Papers Nos. 4 and 5) might be considered as part of the record with the same force and effect as though admitted in evidence at a trial, and further stipulated that such documents together with the exhibits attached to the complaint of the plaintiff constitute the entire record of the case to be presented to the Court. Plaintiff thereupon filed his motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (Docket Paper No. 7).

The operative facts out of which this case arose are as follows: On June 5, 1946, the plaintiff, a World War II veteran, was appointed a classified substitute railway postal clerk in the Post Office Department of the United States. Under the Act of July 31, 1946, 5 U.S.C.A. § 645a et seq., as a veteran, he was given service seniority as of November 8, 1943.

On October 1, 1947 he was appointed a regular clerk and worked at the Philadelphia Terminal of the Postal Transportation Service from August 1, 1948 until September 30, 1957. On September 18th and September 25, 1957, plaintiff was notified in writing by J. A. Stephens, Terminal Superintendent, that because of certain charges filed against him, it was proposed to remove him from his position or to take such further disciplinary action as might be determined to be appropriate as the result of the above mentioned charges. Plaintiff led a reply denying the charges, but on September 27, 1957, the Terminal Superintendent notified him (plaintiff) that he would be suspended from active duty on a non-pay status effective September 30, 1957 for a period not to exceed 30 days "pending a decision as to the action to be taken on the charges".

On October 7, 1957 the Terminal Superintendent recommended to the District Postal Manager of Philadelphia that plaintiff be removed from his position. On October 8, 1957 the District Postal Manager, R. A. Moon, by written memorandum directed the Terminal Superintendent to remove the plaintiff from the postal service effective October 28, 1957. The plaintiff was notified by letter, signed by the said District Postal Manager, R. A. Moon, that he would be discharged from his position on October 28, 1957. Plaintiff was also advised that he might appeal to the United States Civil Service Commission for the Third Circuit Civil Service Region which, in fact, he did. Plaintiff's removal was sustained by the Third United States Civil Service Region as well as by the United States Civil Service Commission Board of Appeals and Review.

Plaintiff thereupon filed his complaint in this Court on June 3, 1960, alleging jurisdiction under the Act of Aug. 1912, 5 U.S.C.A. § 652, and the Administrative Procedural Act of June 11, 1946, 5 U.S.C.A. § 1009. The complaint charged that the removal of the plaintiff from employment as aforesaid was arbitrary, capricious, unwarranted, without proper cause and contrary to law; that the removal was improper and void of any legal effect in that it was without authority and without a lawful delegation of authority from the Postmaster General of the United States to the District Postal Manager. It also asked a hearing de novo and that a preliminary and final injunction be issued restraining the defendant from continuing the illegal removal of the plaintiff and directing reinstatement of the plaintiff to his position of distribution clerk in the Postal Transportation Service, Philadelphia Terminal, Philadelphia, Pennsylvania.

The sole question at issue before the Court is whether the Postmaster General has properly delegated, through channels, authority to the District Postal Manager to discharge the plaintiff. It is the opinion of the Court after careful study of all the documents submitted that proper delegation has been established and the defendant must prevail in this action.

The fundamental basis of the right of the Postmaster General to delegate responsibility will be found in Volume 14 (1949) of the Federal Register at page 5226 under date of August 23, 1949. The President transmitted to the Congress, pursuant to the Reorganization Act of 1949, approved June 20, 1949, 5 U.S.C.A. § 133z et seq., Reorganization Plan No. 3 of 1949, relating to the Post Office Department; subparagraph (b) of Section 1, 5 U.S.C.A. following section 133z–15, reading as follows:

"The Postmaster General is hereby authorized to delegate to any officer, employee, or agency of the Post Office Department designated by him such of his functions as he deems appropriate".

Pursuant to the authority therein granted, the Postmaster General by Order No. 55750 of October 11, 1954, effective October 18, 1954, established a regional headquarters in Philadelphia under a Regional Operations Manager. There was also by the same Order established the office of Regional Controller

and a Regional Personnel Manager administratively responsible to the Regional Operations Manager. The Order provided that functions such as were later listed in the Order, formerly discharged by various headquarters, bureaus and offices in Washington, will now be discharged by the *Regional Staff*. (Emphasis supplied.) Among personnel functions listed were "review and disposition of disciplinary actions". The aforesaid Order was refined further by the Postmaster General's Order No. 55809, dated January 3, 1955, creating in each region the office of Regional Director, which officer "is hereby vested with general jurisdiction over the postal affairs in his respective region, including all the powers, duties, functions, and jurisdiction which have been, or which may in the future be, delegated to each officer and employee under his supervision. The Regional and District Officers and Employees shall perform their duties under the supervision of the Regional Director (including the person acting as such officer) in charge of each region."

To implement this directive, there was issued an Organizational Chart No. 824 in conjunction with Post Office Organization and Administration transmittal letter No. 9 of August 13, 1956, showing the regional organization of the Post Office Department under the direction of the Regional Director, which chart shows the Operations Manager and the Personnel Manager, the Postal Districts and the Transportation Districts to be under the direction of the said Regional Director.

In conjunction with the said chart, there was also issued certain organizational statements which provide at 824.8 that the Personnel Manager "Assists the Regional Director in the direction of all personnel management functions in the region, including * * * review and disposition of disciplinary actions * * *."

It is clear from the foregoing documents that the Postmaster General by proper authority delegated to him did vest the authority in the Regional Director to discharge postal employees under his jurisdiction. The first challenge of the plaintiff that no such delegation was made to the Regional Director must, therefore, of necessity fail.

Indeed, it would be difficult to find a broader delegation of authority than that contained in the Postmaster General's Order No. 55809 of January 3, 1955; Section (b) of that Order reads as follows:

"(b) Pursuant to authority of Section 1(b) of Reorganization Plan 3 of 1949 (63 Stat. 1066), each Regional Director, presently appointed or hereafter appointed (including the person acting as such officer), is hereby vested with general jurisdiction over the postal affairs in his respective region, including all of the powers, duties, functions, and jurisdiction which have been, or which may in the future be, delegated to each officer and employee under his supervision. The regional and district officers and employees shall perform their duties under the supervision of the Regional Director (including the person acting as such officer) in charge of each region."

That it was intended by the Postmaster General to include complete authority to make decisions at the field level is entirely clear from the Press Release No. 118, dated June 1, 1955, of Postmaster General Arthur E. Summerfield, wherein he stated "that with this appointment the Post Office Department is bringing all phases of postal business under one field head in this area." The wording of this Order vesting the Regional Director with general jurisdiction over the postal affairs in his respective region, including within that scope all the powers, duties, functions, and jurisdiction which have been, or which may in the future be, delegated to each officer and employee under his supervision, carries with it the right and duty to direct and supervise all operations at the field level including appointing and discharging employees in accordance with law and regulations.

There is attached to defendant's original brief (Docket Paper No. 4) the Minutes of a staff meeting called by Order of the Regional Director, D. A. Myers, on Monday, August 19, 1957, at 12:55 p. m. Present at that meeting, among others, were Regional Director Myers and District Manager Moon. The unequivocal direction was made by Regional Director Myers at that meeting, as recorded in the Minutes, (Exhibit "E")—"In the future District Managers will sign all disciplinary actions including removals." This determination was recorded in a report of changes made September 4, 1957, (Exhibit "F"), as follows:

"2. Delegation of authority to District Postal Manager to take disciplinary action including removal and suspension in excess of 14 days.

"Before: Letters of Decision on all penalties beyond 14 days or less Suspension were signed by Regional Operations Manager, except in Postal Districts where Regional Director signed.

"Now: Letters of Decision, except in the post offices at Philadelphia, Newark and Pittsburgh, are now signed by the District Postal Manager (reprimands and 14 days or less suspensions not included)."

By Memorandum of October 15, 1957 (Exhibit "G"), the delegation of authority was expressly confirmed in writing to the District Postal Manager of New Jersey and Philadelphia by the Regional Director, D. A. Myers.

Plaintiff, despite the foregoing, contends that this is only a delegation of authority by implication and cites in support thereof the case of Zirin v. McGinnes, 1960, 282 F.2d 113, 116, wherein the United States Court of Appeals for the Third Circuit specifically rejected any delegation of authority by implication. In that case, the power delegated was "to approve all personnel actions affecting appointments, reinstatements, promotions and transfers." Plaintiff argues that the effect of that decision which relies on Iselin v. United States, 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566, clearly demonstrates that absent a direct delegation, the Court should reject the government's contention in this case and conclude that the present discharge was beyond the authority of the District Postal Manager. The fallacy of that argument rests in the assumption that the powers delegated by the Secretary of the Treasury in the Zirin case and those delegated in the instant case are identical. Here the power delegated—"review and disposition of disciplinary actions"—encompasses much broader authority than in Zirin and includes the right to discharge, and does not merely imply it as the plaintiff contends. However, plaintiff further contends that since the action taken by the District Director was "prior to the formal confirmation in writing of the District Director", it is therefore a nullity and ineffective. He argues that the oral delegation of August 19, 1957 is ineffective, as is likewise the determination there made reduced to writing on September 4, 1957 and forwarded to the Regional Personnel Manager.

■ I know of no statutory provision and none has been brought to my attention which requires more formality than is here present, to wit: written minutes of the meeting of August 19, 1957, and the written confirmation thereof on September 4, 1957. The Regional Director was empowered by proper delegation to determine who should act in the case of removals and having properly done so, plaintiff cannot complain in the absence of statutory regulation that it was not done in any particular manner. Although it is not necessary for decision on this point, it is a matter of interest that plaintiff's removal was effective as of October 28, 1957, and not as of October 8, 1957, as he now contends.

In summary, the Court is of the opinion that the documents here submitted sufficiently vest power in the Regional Director to establish proper rules and regulations with respect to disciplinary actions and removals within the framework of the authority delegated to him. that he has done so properly and accord-

ing to law and regulations appears clearly from the record submitted. The defendant's motion for summary judgment, therefore, must be granted.