**Frank A. FILLIPPO**

v.

**S. BONACCURSO & SONS, INC., Continental Bank, Samuel Bonaccurso, and Mary Bonaccurso.**

Civ. A. No. 77–2973.

United States District Court, E. D. Pennsylvania.

Sept. 15, 1978.

Stephen D. Teaford, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

C. Gary Wynkoop, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Continental Bank.

Steven W. Angstreich, Krimsky, Luterman, Stein & Levy, Philadelphia, Pa., for S. Bonaccurso & Sons, Inc., Samuel Bonaccurso and Mary Bonaccurso.

## MEMORANDUM

HANNUM, District Judge.

Plaintiff, a cattle seller, brings this action[1] in three counts to recover for damages arising from the sale of cattle from April 6 through June 2, 1977, Complaint, Docket Entry No. 1. Count I against S. Bonaccurso & Sons, Inc., (SBI) seeks recovery of the price of cattle sold and delivered to SBI as ordered and accepted and for which plaintiff has not been paid. The price was $79,212.52. Count I also bases liability on SBI's violations of the Packers and Stockyards Act, as amended, 7 U.S.C. § 181 et seq. (the Act) and seeks an account-ing for all livestock shipped by plaintiff to SBI and proceeds therefrom. Count II against Continental Bank claims that livestock delivered by plaintiff to SBI and proceeds therefrom are impressed with a statutory trust in plaintiff's favor under the Act which defeats the Bank's perfected security interest in these assets. Count II claims that this trust obligation continued when Continental Bank seized his trust assets pursuant to its security agreement upon SBI's default in repaying the Bank's loan. Count III claims Mary Bonaccurso and Samuel Bonaccurso as officers, employees, agents, directors of SBI violated the Act and are liable to plaintiff for $79,212.52.

The answer of Mary Bonaccurso and SBI, Docket Entry No. 5, admits plaintiff is owed $79,212.52 for cattle purchased on a "dressed weight" basis from plaintiff. *Id.,* at ¶¶ 10, 11. Purchase on a "dressed weight" or "grade and yield" basis means that cattle are delivered to the buyer (SBI) slaughtered, and then graded (i. e., by how

---

1. *Related cases*—Four cases have come before this Court arising out of the demise of S. Bonaccurso & Sons, Inc., (SBI) and its failure to pay for cattle.

In *United States of America v. S. Bonaccurso & Sons, Inc.,* C.A. No. 77–2414, (filed June 14, 1977) the United States Attorney filed for a temporary restraining order and preliminary injunction to enjoin SBI and its agents, officers and employees from further violations of the Packers and Stockyards Act, as amended, 7 U.S.C. § 181 et seq. and from dissipating trust assets which SBI holds for the benefit of its unpaid cash sellers. On June 14, 1977, the Court granted a temporary restraining order and on June 21, 1977, entered a consent decree for a preliminary injunction against SBI and its agents, officers and employees.

In *James A. Hedrick v. S. Bonaccurso & Sons, Inc., Continental Bank, Samuel Bonaccurso and Mary Bonaccurso,* C.A. No. 77–2435, (E.D.Pa. filed June 15, 1977), plaintiff was a cattle seller and seeks to recover the amount of SBI's outstanding indebtedness, $261,250.83, and assets seized by the Bank under its perfected security interest which were subject to a statutory trust for plaintiff as an unpaid cash seller under the Act. 7 U.S.C. § 196. In two stipulations dated July 19, 1977, and approved by this Court on July 21, 1977, the parties agreed that Continental Bank would collect SBI's remaining accounts receivable and inventory, would hold the first $100,000 collected in a non-interest bearing account, would apply any excess to reduce SBI's indebtedness to the Bank without

prejudice to plaintiff's rights, would distribute the proceeds of the custodial account to any unpaid cash seller of livestock to SBI who obtains a final judgment declaring he has priority over Continental Bank's perfected security interest, and, after all claims had been paid, would otherwise apply the balance in the custodial account to satisfy SBI's indebtedness to the Bank. (Hereafter referred to as the "July 19, 1977 stipulation").

In *Frank A. Fillippo v. S. Bonaccurso & Sons, Inc., Continental Bank, Samuel Bonaccurso and Mary Bonaccurso,* C.A. No. 77–2973, (E.D.Pa. filed August 26, 1977), plaintiff was a cattle seller and seeks to recover the amount of SBI's outstanding indebtedness, $79,212.52, and his trust assets seized by the Bank under its perfected security interest.

A fourth action, *Gold Merit Beef Processors, Inc. v. S. Bonaccurso & Sons, Inc. v. Samuel Bonaccurso and Mary Bonaccurso,* C.A. No. 77–4342, (E.D.Pa. filed December 21, 1977) was terminated by stipulation dated May 25, 1977, and approved by this Court on June 6, 1977. By agreement, judgment was entered against plaintiff as to the liability of Mary Bonaccurso and Samuel Bonaccurso.

Counsel has cooperated in completing discovery in the *Hedrick* and *Fillippo* cases and the same depositions of Mary Bonaccurso, Samuel Bonaccurso, Ronald Vicari (for Continental Bank) and Josephine DeGeorge (a clerk for SBI) have been filed in both cases.

lean or fat the animal is), weighed and priced to determine how much is owed the seller (plaintiff). *Id.*; Deposition of Frank A. Fillippo at 4–5, 68–69, Docket Entry No. 20. SBI admits that it was a "packer" under the the the Act. Answer to Complaint on behalf of S. Bonaccurso & Sons, Inc., and Mary Bonaccurso at ¶ 8, Docket Entry No. 5, but denies that plaintiff was entitled to payment by the close of the next day following determination of the purchase price (next day payment) under the Act, asserting plaintiff sold to SBI on credit rather than on a cash basis. *Id.* ¶¶ 13–16. SBI denies it violated the Act. Mary Bonaccurso admits she was an officer of SBI, *Id.*, at ¶ 32, but denies she was a "packer" under the Act, *Id.*, at ¶ 33, and denies any liability for SBI's violations of the Act. *Id.*, at ¶ 40. Samuel Bonaccurso admits he was an officer of SBI, Answer to Complaint on behalf of Samuel Bonaccurso at ¶ 32, Docket Entry No. 8, but denies he was a "packer" under the Act, *Id.*, at ¶ 33, and denies any liability to plaintiff for SBI's debt and violations of the Act. *Id.*, at ¶ 40.

■ Continental Bank admits SBI was, prior to July, 1977, in the business of buying and slaughtering cattle and packing and selling meat products, Answer of defendant Continental Bank at ¶ 9, Docket Entry No. 4, admits SBI defaulted on loans made by the Bank, *Id.*, at ¶ 26, and admits that the Bank seized SBI's inventory, accounts receivables and other assets pursuant to its security interest. *Id.* Continental Bank

denies that plaintiff's were "cash sales" under the Act and claims plaintiff was thus not entitled to next day payment under the Act. *Id.*, at ¶ 13. The Bank asserts that its perfected security interest in SBI's inventory, receivables and other proceeds is superior to plaintiff's interest, *Id.*, at Fourth Affirmative Defense, and attacks the constitutionality of Congress creating a "secret lien" in favor of plaintiff superior to the Bank's perfected security interest. *Id.*, at Seventh Affirmative Defense.[2]

Presently before the Court are the following five motions:

1) Motion of Plaintiff for Judgment on the Pleadings Against Defendant S. Bonaccurso & Sons, Inc., under Fed.R. Civ.P. 12(c). Docket Entry No. 21.

2) Motion of Plaintiff for Summary Judgment Against Defendants Samuel Bonaccurso and Mary Bonaccurso under Fed.R.Civ.P. 56(a) and for Costs under Fed.R.Civ.P. 11. Docket Entry No. 33.

3) Motion of Defendants Mary Bonaccurso and Samuel Bonaccurso for Summary Judgment Against Plaintiff under Fed.R.Civ.P. 56(b) and for Costs under Fed.R.Civ.P. 11. Docket Entry No. 22.

4) Motion of Plaintiff for Summary Judgment Against Defendant Continental Bank under Fed.R.Civ.P. 11. Docket Entry No. 38.

---

**2.** In its Memorandum of Authorities in Support of Motions of defendant Continental Bank for summary judgment at 17, Docket Entry No. 23, the Bank reasserts its constitutional attack but cites no supporting case authority. The constitutional issue need not be decided but the Court finds no constitutional impediment to Congress' action in creating the statutory trust of 7 U.S.C. § 196. In September, 1976, Congress amended the Act to create a trust for unpaid cash sellers of livestock. The Bank's security interest did not attach until its debtor, SBI, acquired rights in the collateral, viz., in June, 1977, when plaintiff transferred livestock to SBI's possession. Pa.Stat.Ann. tit. 12A § 9–203(1). At the very same moment, the livestock and any proceeds therefrom became impressed with a superseding statutory trust for plaintiff's benefit arising under federal law.

The Bank's security interest was limited at all times by Pa.Stat.Ann. tit. 12A § 9–104. The Packers and Stockyards Act, 7 U.S.C. § 196, "governs the rights of parties to and third parties affected by transactions in particular types of property". Pennsylvania's commercial law impaired Continental Bank's rights to collateral (livestock inventory, receivables and other proceeds therefrom) which is excluded from Article 9 of Pennsylvania's version of the Uniform Commercial Code. Congress denied no process due and impaired no obligation of contract but merely used the exclusion of the Uniform Commercial Code's § 9–104(a) to subject a particular type of property, livestock, bought and sold in interstate commerce to a statutory trust and thereby to a federal schedule of priorities among claimants.

5) Motion of Defendant Continental Bank for Summary Judgment Against Plaintiff under Fed.R.Civ.P. 56(b) and for Costs under Fed.R.Civ.P. 11. Docket Entry No. 24.

**PART 1:** *Motion Of Plaintiff For Judgment On The Pleadings Against Defendant SBI, Docket Entry No. 21.*

By appropriate Order following this memorandum, judgment on the pleadings is entered in favor of plaintiff and against defendant SBI on the debt of $79,212.52.

(1.1) The test for ruling on a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) was stated in *M. L. Lee & Co. v. American Cardboard & Packaging Corp., et al.,* 36 F.R.D. 27, 29 (E.D.Pa.1964):

> "It is settled law that a party will be granted judgment upon a motion for judgment on the pleadings only if there are no disputed facts, which, if proven adversely to the moving party, would defeat recovery. For purposes of this rule, all the allegations of ·the defendant['s] answer which are well pleaded are taken as true and all averments by the plaintiff which are denied by the defendant are taken as false. [Moore's Federal Practice ¶ 12.15] . . . It is no answer that the defendant, at the trial of the cause, might be unable to prove the facts alleged in an effort to defeat recovery. *Weinrich v. Retail Credit Co.,* 186 F.Supp. 392 (W.D.Pa.1960) [Fed.R.Civ.P. 12(b) motion to dismiss complaint]. In deciding the motion for judgment on the pleadings, the court will not look beyond the pleadings themselves to decide whether certain facts exist on which a substantive rule of law will operate to exclude proof of other facts."

Only if matters outside the pleadings are presented to and not excluded by the court, may the motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) be treated as a motion for summary judgment under Fed.R.Civ.P. 56. Plaintiff has relied solely on matters within the pleadings to support his motion for judgment on the pleadings against SBI. SBI has filed no response to this motion.

(1.2) Plaintiff has moved for judgment on the pleadings as to so much of Count I as alleges that SBI owes him $79,212.52. Complaint at ¶¶ 10, 11, Docket Entry No. 1; Plaintiff's Motion for Judgment on the Pleadings Against S. Bonaccurso & Sons, Inc., at ¶¶ 3–5, Docket Entry No. 21. SBI's answer admits the indebtedness but by way of clarification avers that $79,212.52 represents the price of cattle SBI purchased from plaintiff on a "dressed weight" basis. Answer to Complaint on Behalf of S. Bonaccurso & Sons, Inc., and Mary Bonaccurso at ¶¶ 10, 11, Docket Entry No. 5. Throughout its answer, SBI asserts that plaintiff's sales were on credit and not "cash sales" entitled to the guarantee of next day payment under the Act. *Id.,* at ¶¶ 13, 16.

(1.3) Even granting the truth of SBI's assertion that plaintiff's were not "cash sales" under the Act but were sales on credit on a "dressed weight" basis, SBI's admission that it owes plaintiff $79,212.52 entitles plaintiff to recover on the debt. The federal Act does not preempt enforcement by way of debt and only supersedes state law which places conflicting prompt payment requirements on packers. 7 U.S.C. § 228c. SBI's denials go to whether plaintiff may invoke the additional enforcement machinery of the federal Act, but do not defeat his right to recover as a matter of state law. This Court has pendent jurisdiction over plaintiff's claim under Count I which alleges the SBI debt and derives from a "nucleus of operative fact" common to his claims under the federal Act. *Compare, PAAC v. Rizzo,* 502 F.2d 306, 313 (3d Cir. 1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804. Accordingly, plaintiff is entitled to judgment on the pleadings that SBI owes him $79,212.52. Fed.R.Civ.P. 12(c). However, this judgment is not final since all claims, rights and liabilities of all the parties have yet to be determined. Fed.R.Civ.P. 54(b).

The remainder of this opinion relies on matters outside the pleadings considered by the Court for purposes of disposing of the remaining four cross motions for summary judgment. Fed.R.Civ.P. 56(c).

PART 2: *Motion Of Plaintiff For Summary Judgment Against Defendants Samuel Bonaccurso and Mary Bonaccurso, Docket Entry No. 33.*

It appearing that genuine issues of material fact exist, plaintiff's motion for summary judgment against defendants Samuel Bonaccurso and Mary Bonaccurso is, by appropriate order following this memorandum, denied.

(2.1) The rule for deciding motions for summary judgment is stated at Fed.R. Civ.P. 56(c):

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The rule has been interpreted as follows:

"Any doubt as to the existence of a genuine issue of [material] fact is to be resolved against the moving party * * * The law is clear that one who moves for a summary judgment has the burden of demonstrating that there is no genuine issue of [material] fact."

*Krieger v. Ownership Corporation,* 270 F.2d 265, 270 (3d Cir. 1959) (citations omitted).

"Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt."

*Goodman v. Mead Johnson & Co., et al.,* 534 F.2d 566, 573 (3d Cir. 1976). The rule has been amended to accomplish "[t]he very mission of the summary judgment procedure [which] is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Robin Construction Company, et al., v. United States of America,* 345 F.2d 610, 615 (3d Cir. 1965). Fed.R.Civ.P. 56(e) now states that:

"[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

"Documents filed in support of a motion for summary judgment are to be used to determine whether issues of fact exist and *not* to decide the fact issues themselves." *Krieger, supra,* at 270, cited in *Manetas v. International Petroleum Carriers, Inc.,* 541 F.2d 408, 414 (3d Cir. 1976).

(2.2) Turning from the narrow view of the facts presented by the pleadings to the more complete one appearing in the depositions and other sources used for summary judgment purposes, the Court states the following additional facts. Fed.R.Civ.P. 56(c).

In separate transactions from the 6th through the 22d of April, 1977, plaintiff sold cattle to SBI on a "dressed weight" basis with a purchase price of over $107,000. Deposition of Frank A. Fillippo at 18–21, Docket Entry No. 20. In response to plaintiff's continuing requests Samuel Bonaccurso paid plaintiff $40,000 by check toward the end of May, 1977. *Id.,* at 10, 13. The check cleared and reduced SBI's indebtedness to some $67,000. Deposition of Samuel Bonaccurso at 56–57, Docket Entry No. 27.

From the week after April 22, 1977, through his last purchases for SBI on June 2, 1977, plaintiff bought cattle on a commission basis receiving $3.00 per head. Deposition of Frank A. Fillippo at 6, Docket Entry No. 20. Under this arrangement, plaintiff would go to various livestock auction houses and stables, purchase cattle at the price SBI wanted to pay, and SBI would make payment directly to the auction houses and truckers. Deposition of Samuel Bonaccurso at 18–19, 26, Docket Entry No. 27. For the first two weeks of the commission purchases, SBI paid plaintiff his commissions. In

the third and fourth weeks SBI failed to pay plaintiff approximately $700 in commissions. Deposition of Frank A. Fillippo at 26–28; *see,* Deposition of Samuel Bonaccurso at 57. At two livestock sales on June 1, 1977, and at one sale on June 2, 1977, plaintiff purchased some $12,000 worth of cattle for SBI's account with New Holland, Leesport, and Quakertown sales companies. Deposition of Frank A. Fillippo at 36–37, 78. SBI never paid for these purchases. *Id.*; Answer to Complaint on Behalf of S. Bonaccurso & Sons, Inc., and Mary Bonaccurso at ¶¶ 10, 11, Docket Entry No. 5; deemed admitted by Samuel Bonaccurso's failure to deny under Fed.R.Civ.P. 8(d), Answer to Complaint on Behalf of Samuel Bonaccurso at ¶¶ 10, 11, Docket Entry No. 8. At the demand of the three sellers, plaintiff fully satisfied SBI's delinquent accounts by paying a total of $12,212.52. Deposition of Frank A. Fillippo at 78. It is admitted that SBI owes plaintiff $79,212.52. Answer to Complaint on Behalf of S. Bonaccurso & Sons, Inc. and Mary Bonaccurso at ¶¶ 10, 11; Answer to Complaint on Behalf of Samuel Bonaccurso at ¶¶ 10, 11.

On June 22, 1977, plaintiff notified SBI by letter to defendant Samuel Bonaccurso that he was preserving his rights to a statutory trust created by the Packers and Stockyards Act (the Act) to secure him payment for the June 1 and June 2, 1977, cash sales made to SBI. Deposition of Frank A. Fillippo at 44–45, Docket Entry No. 20. Plaintiff also sent a copy of this letter to the Department of Agriculture. *Id.,* at 29.

In June, 1977, SBI defaulted in repaying its loan from Continental Bank which held a perfected security interest in SBI's inventory and proceeds therefrom under Pennsylvania's version of Article 9 of the Uniform Commercial Code, Pa.Stat.Ann. tit. 12A § 9–101 *et seq.* Complaint at ¶ 26, Docket Entry No. 1; deemed admitted under Fed. R.Civ.P. 8(d), Answer to Complaint on Behalf of S. Bonaccurso & Sons, Inc. and Mary Bonaccurso at ¶ 26, Docket Entry No. 5 and Answer to Complaint on Behalf of Samuel Bonaccurso at ¶ 26, Docket Entry No. 8. On June 27, 1977, Continental Bank exercised its rights upon SBI's default, took

possession of livestock in inventory and directed certain of SBI's account debtors to make payment directly to the Bank instead of SBI. At his deposition, Samuel Bonaccurso testified that SBI was not in default, but had merely refused to pay until the Bank forwarded a balance sheet showing the loan's interest and principal being reduced by SBI's payments. Deposition of Samuel Bonaccurso at 51, Docket Entry No. 27. The factual dispute as to whether SBI did or did not default on the Bank's loans might be material to Continental Bank's authority to use Article 9's remedies upon default, *see,* Pa.Stat.Ann. tit. 12A § 9–507, but is not material to determining whether SBI, Samuel Bonaccurso and Mary Bonaccurso violated the next day payment requirement of the federal Act and whether plaintiff has priority over the Bank to assets seized by the Bank which were subject to a statutory trust under that Act.

During the relevant months in 1977, Mary Bonaccurso was owner of 100% of the outstanding shares of SBI, and was president and a director of SBI. Deposition of Mary Bonaccurso at 7–8, Docket Entry No. 29. Also during that time, Samuel Bonaccurso, Mary Bonaccurso's son, was a director and officer of SBI and was responsible for buying livestock from sellers like plaintiff. *Id.,* at 9. As a condition of agreeing to increase SBI's indebtedness, Continental Bank had by this time taken responsibility for monitoring SBI's accounts payable away from Samuel Bonaccurso and given it to Dominic Greco, Samuel Bonaccurso's brother-in-law. *Id.,* at 6. Both Mary Bonaccurso and Samuel Bonaccurso relate what SBI did as what "we" were doing. *See,* Deposition of Samuel Bonaccurso at 51, Docket Entry No. 27; Deposition of Mary Bonaccurso at 14.

■ (2.3) In ruling on plaintiff's motion for summary judgment and the other three such motions, the first issue for decision is which law—federal or state—determines plaintiff's rights to payment from Mary Bonaccurso and Samuel Bonaccurso for cattle sold to SBI. The federal Packers and

Stockyards Act, 7 U.S.C. § 228c, by its terms clearly preempts any concurrent or conflicting state law regulating bonding, prompt payment and security interests governed by the Act. The choice of law rule this Court applies is as follows: the rights of plaintiff against individual defendants Mary Bonaccurso and Samuel Bonaccurso are determined initially by looking to the federal Act.

■ (2.4) Having decided the federal Act determines plaintiff's rights against the individual defendants, the Court considers the argument that neither 7 U.S.C. § 228 authorizing the Secretary of the Department of Agriculture to enforce the provisions of the Act, nor 7 U.S.C. § 196 which creates a statutory trust for the benefit of unpaid cash sellers could be interpreted as granting plaintiff a cause of action. Memorandum of Law in Support of Motion of Mary Bonaccurso and Samuel Bonaccurso for Summary Judgment at ¶¶ B(2), B(3), B(4); *see, Pacific Trading Co., et al. v. Wilson and Co., et al.,* 547 F.2d 367, 368 (7th Cir. 1976). Whatever may have been the law prior to the Act's amendment in 1976, 7 U.S.C. § 209(a) expanded the claims which may be enforced by private parties to include suits by an unpaid cash seller against a packer. *See,* 1976 U.S.Code Cong. and Admin.News pp. 2267, 2273. Plaintiff's complaint at ¶ 23, Docket Entry No. 1, bases his cause of action on Section 308 of the Act, 7 U.S.C. § 209.

From the decision that plaintiff has a cause of action under the Act, the Court continues analyzing each element necessary to recover under the Act to determine if a genuine issue of fact material to any one element exists to bar granting summary judgment under Fed.R.Civ.P. 56.

(2.5) *Are the individual defendants "persons" and "packers" under the Act?*

Defendants admit SBI is a "packer" under the Act. Answer to Complaint on Behalf of S. Bonaccurso & Sons, Inc., and Mary Bonaccurso at ¶ 9, Docket Entry No. 5; deemed admitted under Fed.R.Civ.P. 8(d) by Samuel Bonaccurso's failure to deny, Answer to Complaint on Behalf of Samuel Bonaccurso at ¶ 9, Docket Entry No. 8. Yet only if Mary Bonaccurso and Samuel Bonaccurso are "persons" under 7 U.S.C. § 182(1) can they be "packers" under 7 U.S.C. § 191, and only if they are "packers," can they be held liable for violating, *inter alia,* the duty 7 U.S.C. § 228b(a) puts on packers to make next day payment, the duty 7 U.S.C. § 228b(c) puts on packers to not delay payment, and the duty of 7 U.S.C. § 196(b) puts on packers to hold livestock and proceeds therefrom in statutory trust for their unpaid cash sellers. A closely related question is whether the individual defendants are "persons" under 7 U.S.C. § 182(1) so as to be liable in plaintiff's action brought under 7 U.S.C. § 209.

■ Given the closely held nature of the SBI corporation, his active management role, the fact that plaintiff's June 22, 1977 notice that SBI was delaying payment was addressed to him in his role as buyer of SBI's livestock, *see,* ¶ 2.2, *supra,* the Court finds no genuine issue of material fact exists as to whether Samuel Bonaccurso was a "person engaged in the business . . . of buying livestock in commerce for the purpose of slaughter" and thereby hold him to be a "person" and a "packer" under the Act. 7 U.S.C. §§ 182(1), 191. This holding is buttressed by 7 U.S.C. § 223 which imputes liability to the corporate packer "[for] the act, omission, or failure of any agent, officer, or other person acting for or employed by any packer," as well as deeming the act, omission, or failure that of such agent, officer or other person.

Mary Bonaccurso argues that when Congress in 1976 repealed those subsections of 7 U.S.C. § 191 outlining how much stock ownership would bring a "person" within the definition of "packer," it intended to not impose the Act's duties on her since she was not "actively engaged" in SBI's business activities. Answer on Behalf of S. Bonaccurso & Sons, Inc., and Mary Bonaccurso at ¶¶ 36–40, Docket Entry No. 5; Memorandum of Law in Support of Motion of Mary Bonaccurso and Samuel Bonaccurso for Summary Judgment at ¶ B(1), Docket En-

try No. 22; Memorandum of Law in Opposition to Plaintiff Frank A. Fillippo's Cross-Motion for Summary Judgment Against Samuel Bonaccurso and Mary Bonaccurso at 10, Docket Entry No. 32. 7 U.S.C. § 191 formerly provided:

"When used in this chapter—

The term "packer" means any person engaged in the business (a) of buying livestock in commerce for purposes of slaughter, or (b) of manufacturing or preparing meats or meat food products for sale or shipment in commerce, or (c) of manufacturing or preparing livestock products for sale or shipment in commerce, or (d) of marketing meats, meat food products, livestock products, dairy products, poultry, poultry products, or eggs, in commerce; but no person engaged in such business of manufacturing or preparing livestock products or in such marketing business shall be considered a packer unless—

(1) Such person is also engaged in any business referred to in clause (a) or (b) of this section, or unless

(2) Such person owns or controls, directly or indirectly, through stock ownership or control or otherwise, by himself or through his agents, servants, or employees, any interest in any business referred to in clause (a) or (b) of this section, or unless

(3) Any interest in such business of manufacturing or preparing livestock products, or in such marketing business is owned or controlled, directly or indirectly, through stock ownership or control or otherwise, by himself or through his agents, servants, or employees, by any person engaged in any business referred to in clause (a) or (b) of this section, or unless

(4) Any person or persons jointly or severally, directly or indirectly, through stock ownership or control or otherwise, by themselves, or through their agents, servants, or employees, own or control in the aggregate 20 per centum or more of the voting power or control in such business of manufacturing or preparing livestock products, or in such marketing business

ness and also 20 per centum or more of such power or control in any business referred to in clause (a) or (b) of this section."

As amended, 7 U.S.C. § 191 now states:

"When used in this chapter the term 'packer,' means any person engaged in the business

(a) of buying livestock in commerce for purposes of slaughter, or

(b) of manufacturing or preparing meats or meat food products for sale or shipment in commerce, or

(c) of marketing meats, meat food products, or livestock products in an unmanufactured form acting as a wholesale broker, dealer, or distributor in commerce."

The legislative history states that the amendment made no change in subsections (a) and (b). 1976 U.S.Code Cong. and Admin.News at 2272. Thus, deleting the former version's references to stock ownership was only meant to affect former subsections (c) and (d), and in no way establishes Congress' desire to narrow the definition of "packer" for persons engaged in businesses described in subsections (a) and (b) of 7 U.S.C. § 191.

■ The Act does not read *actively engaged*, but just defines a "packer" as a "person" *engaged* in one of the businesses listed in 7 U.S.C. § 191. Being *engaged* in an activity requires more than a single act or transaction or an occasional participation. Black's Law Dictionary 622 (Revised 4th Ed.1968). No genuine issue of material fact exists as to the continuous nature of Mary Bonaccurso's activities as a director and salaried president of SBI. Deposition of Mary Bonaccurso at 7–8, 9–11, Docket Entry No. 29. But Mary Bonaccurso argues that while acting as agent for the corporate defendant SBI receiving only compensation by salary or wage she could not be embarked on *business* on her own account for profit. Memorandum in Opposition to Plaintiff Frank A. Fillippo's Cross-Motion for Summary Judgment Against Samuel Bonaccurso and Mary Bonaccurso at 10,

Docket Entry No. 32. This misses the mark. What she did as SBI's agent would inure to Mary Bonaccurso's benefit through her salary as president or potentially through her dividends as owner of 100% of SBI's stock. Mary Bonaccurso sometimes signed the checks SBI used to pay livestock sellers like plaintiff. Deposition of Josephine DeGeorge at 20, Docket Entry No. 30. She also advanced collateral to secure Continental Bank's loan to SBI, knew of the loan, and knew that if SBI did not have enough money to buy cattle, they (SBI, Samuel and Mary Bonaccurso) would hold one week's worth of bills out and continue to make purchases. Deposition of Mary Bonaccurso at 15–16, 18, 14, Docket Entry No. 29. As is further explained in ¶ 2.6, *infra,* Mary Bonaccurso may not escape liability because her acts were on her corporation's behalf once it established she is a "packer." However, a genuine issue of material fact still exists as to whether by her acts, omissions or failures while president and sole shareholder of SBI, Mary Bonaccurso was engaged in the business (a) of buying livestock in commerce for purposes of slaughter or (b) of manufacturing or preparing meats or meat food products for sale or shipment in commerce or (c) of marketing meats, meat food products, or livestock products in an unmanufactured form acting as a wholesale broker, dealer, or distributor in commerce. 7 U.S.C. § 191.

(2.6) *Can this Court pierce the corporate veil?*

■ No real piercing is necessary since any "person" who is a "packer" would be deemed liable for his own "act, omission or failure" committed while acting for or employed by any packer and within the scope of his employment. 7 U.S.C. § 223. A Senate amendment which would have given the Secretary of Agriculture authority to narrow the definition of "packer" was withdrawn by the conference committee, 1976 U.S.Code Cong. and Admin.News at 2284, and nothing in the legislative history evidences an intent to limit individual liability possible under the former Act. Prior to the 1976 amendments, *Bruhn's Freezer Meats v.*

*U. S. Department of Agriculture,* 438 F.2d 1332, 1343 (8th Cir. 1971) held:

> "[c]learly, an [administrative] order limited in its application only to the corporate petitioners would probably prove futile as the corporations could be dissolved and the individual defendants could then, under the cloak of new corporations, engage in the proscribed activities and thereby frustrate the purposes of the Act. The law is well settled that the 'corporate entity may be disregarded when the failure to do so would enable the corporate device to be used to circumvent a statute.' " (citations omitted).

*Bruhn's Freezer Meats* was decided when only the Secretary could sue packers to enforce provisions of the Act. With the advent of his cause of action under 7 U.S.C. § 209, the unpaid cash seller suing a packer who delays payment has standing similar to that only the Secretary once had and can collect damages from those who act as tentacles of the corporate packer. As in *Sebastopol Meat Company v. Secretary of Agriculture,* 440 F.2d 983, 985 (9th Cir. 1971), state law limitations on the *alter ego* doctrine are not necessarily controlling in determining the permitted scope of private suits brought by individuals to enforce rights under a superseding federal statute. Under *Bruhn's Freezer Meats* and *Sebastopol Meat Company, supra,* the Court holds that the corporate device cannot immunize individual defendants from liability under 7 U.S.C. § 209 once it is found that they are "persons" and "packers." Thus, Samuel Bonaccurso is liable as a "packer" for "acts, omissions, or failures" violating plaintiff's rights under the Act and committed on behalf of SBI. Depending on whether Mary Bonaccurso is proved to be a "packer," she may be similarly liable.

(2.7) *Is plaintiff a "seller" under the Act?*

An argument made by defendant Continental Bank discloses an issue material to resolving plaintiff's motion for summary judgment against individual defendants Mary Bonaccurso and Samuel Bonaccurso. Answer of Continental Bank to Plaintiff's

Cross-Motion for Summary Judgment at ¶ 2, Docket Entry No. 36. The issue is whether plaintiff was a "seller" on June 1 and June 2, 1977, when he bought cattle at three livestock sales as SBI's agent and received a $3.00 per head commission. Unless he was a "seller," plaintiff was not entitled to next day payment under 7 U.S.C. § 228b.

A regulation in effect at the time treats an agent like a "seller" once the agent pays the debt incurred by purchasing livestock for his packer-principal, and gives the agent the right of a cash seller to demand payment by the close of the next business day following notification that the purchase price has been paid. 9 C.F.R. § 201.43(c). Plaintiff paid the three livestock sales upon SBI's default, Deposition of Frank A. Fillippo at 78, Docket Entry No. 20, but a genuine issue of material fact exists as to whether and when the individual defendants received notification that SBI's debt had been fully paid.

### (2.8) *Is plaintiff a "cash seller" under the Act?*

So far it is apparent that genuine issues of material fact exist as to whether Mary Bonaccurso is a "packer" and whether and when Mary Bonaccurso and Samuel Bonaccurso received notification that plaintiff had paid SBI's debt to the three livestock sellers for commission purchases made on June 1 and June 2, 1978. Presently the Court considers whether plaintiff's remaining claims for sales made on a "dressed weight" basis were "cash sales" under the Act.

 Individual defendants challenge plaintiff's contention that his sales to SBI were "cash sales." Answer of Samuel Bonaccurso and Mary Bonaccurso to Plaintiff Frank A. Fillippo's Motion for Summary Judgment at ¶ 5, Docket Entry No. 32; Memorandum Of Law in Support of Motion of Mary Bonaccurso and Samuel Bonaccurso for Summary Judgment Against Plaintiff at ¶¶ B(3), B(4), Docket Entry No. 22; Answer to Complaint on Behalf of S. Bonaccurso & Sons, Inc. and Mary Bonaccurso

at ¶¶ 13, 16, Docket Entry No. 5. From this they correctly reason that the Act does not require next day payment nor create a statutory trust to insure payment for sales on credit. 7 U.S.C. §§ 228b(b), 196(b), 196(c). The only factual disagreement defendants have is essentially that plaintiff and SBI had a course of dealing, *see*, Pa.Stat.Ann. tit. 12A § 1–205, whereby plaintiff never expected, demanded or received SBI's payment by the close of the next business day following transfer of the cattle to SBI's possession and determination of the purchase price. Memorandum of Law in Support of Motion of Mary Bonaccurso and Samuel Bonaccurso for Summary Judgment Against Plaintiff at ¶¶ B(3), B(4), *supra*. To ease analysis, the Court distinguishes between SBI's purchases on a "grade weight" basis from April 6 through April 22, 1977, and purchases made on a "live weight" commission basis from approximately April 23 through June 2, 1977.

 7 U.S.C. § 228b(a) required full payment for cattle bought on a "grade weight," "dressed weight" or "grade and yield" basis by the close of the next business day following slaughter, grading, weighing and pricing of the live cattle transferred by plaintiff to SBI's possession. Ordinarily, this postpones the date for payment for a few days longer than purchases made on a "live weight" basis where payment is due by the close of the next business day following mere transfer of live cattle to SBI's possession. *Id.* The delay in payment for purchases on a "grade weight" basis does not convert a "cash sale" into a sale on credit as defendants contend. Just as for sales on a "live weight" basis, the only way a "dressed weight" seller can forego his right to the Act's guarantees of payment for "cash sales" is by executing an "express agreement in writing" waiving his right to next day payment, which agreement must be "disclosed in" the records of the seller and those of the purchaser and on the accounts or other documents issued by the purchaser relating to the transaction. 7 U.S.C. §§ 228b(b), 196(c); 1976 U.S.Code Cong. and Admin.News at 2278.

At most, defendants would try to prove an oral agreement or one implied in plaintiff's course of dealing with SBI and thus would be unable to prove an "express agreement in writing" disclosed in all three sources required by 7 U.S.C. § 228b(b). If Congress had meant the agreement to be implied, it would not have said "express." If Congress had meant the agreement to be found in the parties' course of dealing, it would have wanted the agreement to be "disclosed *by*" rather than "disclosed *in*" certain records. Instead Congress intended all sales of livestock to be treated as "cash sales" and intended to give effect to an agreement waiving the Act's protections of cash sales only if such agreement is (1) express, (2) in writing, and (3) disclosed in or filed with specified kinds of business documents evidencing the sale. *See*, 1976 U.S.Code Cong. and Admin.News at 2268. The Court finds no genuine issue exists altering the fact that plaintiff's sales to SBI on a "dressed weight" basis were "cash sales" and he a "cash seller" under the Act. This covers approximately $67,000 of the $79,212.52 SBI admits owing plaintiff.

Once on a commission basis, plaintiff purchased cattle on SBI's account with certain livestock auction houses. The auction houses sold on a "live weight" basis and, unless they waived the right pursuant to 7 U.S.C. § 228b(b), were entitled to payment by the close of the next business day following transfer of their cattle to SBI's possession. As he paid each auction house, 9 C.F.R. § 201.43(c) implementing 7 U.S.C. § 228b(a) gave plaintiff the right of a cash seller to demand payment from SBI by the close of the next business day following individual defendants' receipt of notification that each account had been paid. As with plaintiff's sales on a dressed weight basis, defendants Mary Bonaccurso and Samuel Bonaccurso put forth no evidence raising a genuine issue as to the fact that no express agreement in writing comporting with 7 U.S.C. § 228b(b) exists or is believed to exist waiving plaintiff's right to prompt payment under 7 U.S.C. § 228b(a) as implemented by 9 C.F.R. § 201.43(c). The issue of whether and when defendants received notification

that plaintiff paid SBI's debts which precluded finding him to be a "seller" as to his commission purchases for SBI in ¶ 2.7, *supra*, also exists as to whether plaintiff was a "cash seller." This factual question is material to determining the date as of which plaintiff was entitled to payment from SBI on his commission purchases. Within thirty days of that date plaintiff had to notify SBI and the Packers and Stockyards Administration of the Department of Agriculture of SBI's failure to pay in order to preserve his statutory trust under 7 U.S.C. § 196 against a secured creditor like defendant Continental Bank. *See*, ¶ 4.5, *infra*.

PART 3: *Motion Of Defendants Mary Bonaccurso and Samuel Bonaccurso For Summary Judgment Against Plaintiff, Docket Entry No. 22.*

It appearing that genuine issues of material fact exist, the motion of defendants Mary Bonaccurso and Samuel Bonaccurso is, by appropriate order following this memorandum, denied.

(3.1) The same rule for deciding motions for summary judgment recited in ¶ 2.1, *supra*, is used to decide individual defendants' motion for summary judgment against plaintiff.

(3.2) The facts presented in the pleadings and those in other sources considered on a motion for summary judgment under Fed. R.Civ.P. 56 recited in ¶ 2.2, *supra*, are used to decide individual defendants' motion for summary judgment against plaintiff.

(3.3) Similar to the choice of law rule announced in ¶ 2.3, *supra*, this Court applies the following rule: the liabilities of individual defendants Mary Bonaccurso and Samuel Bonaccurso to plaintiff are determined initially by looking to the federal Act. 7 U.S.C. § 228c.

(3.4) As was shown in ¶ 2.4, *supra*, it is clear as a matter of law that plaintiff has a cause of action against violators of the Act. 7 U.S.C. § 209.

(3.5) Above ¶ 2.5 showed Samuel Bonaccurso to be both a "person" and a "packer"

under the Act, and yet found a genuine issue of material fact exists as to whether Mary Bonaccurso was a "packer." Partial summary judgment in favor of Mary Bonaccurso is just as inappropriate here upon consideration of the motion of individual defendants for summary judgment. There is ample evidence on the record in the depositions of Mary Bonaccurso and Josephine DeGeorge raising a factual issue as to whether Mary Bonaccurso was engaged in one of the businesses listed in 7 U.S.C. § 191 which precludes granting summary judgment in her favor.

(3.6) As was explained in ¶ 2.6, *supra*, nothing in the amended Act's legislative history evidences an intent to permit individual defendants who are "packers" to escape liability merely because they violate the Act in their roles as agents of a corporate packer.

(3.7) While selling on a "dressed weight" basis there is no dispute that plaintiff was a "seller" under the Act. Once plaintiff bought for SBI on a commission basis and upon paying for cattle bought on SBI's account, the regulations gave plaintiff the right of a cash seller to demand next day payment. 9 C.F.R. § 201.43; ¶ 2.7, *supra*.

(3.8) Neither plaintiff's alleged oral agreement nor his course of dealing operated to convert his sales from "cash sales" to sales on credit under the Act. 7 U.S.C. §§ 228b(b), 196(c); ¶ 2.8, *supra*.

PART 4: *Motion Of Plaintiff For Summary Judgment Against Defendant Continental Bank, Docket Entry No. 38.*

It appearing that genuine issues of material fact exist, plaintiff's motion for summary judgment against defendant Continental Bank is, by appropriate order following this memorandum, denied.

(4.1) The same rule for deciding motions for summary judgment recited in ¶ 2.1, *supra*, is used to decide plaintiff's motion for summary judgment against defendant Continental Bank.

(4.2) The facts presented in the pleadings and those in other sources considered on motions for summary judgment under Fed. R.Civ.P. 56 recited in ¶ 2.2, *supra*, are used to decide plaintiff's motion for summary judgment against Continental Bank.

(4.3) In ruling on this motion for summary judgment, the first issue for decision is which law—federal or state—determines the priority of plaintiff's and Continental Bank's claims to SBI's livestock inventory and proceeds.

Prior to the 1976 amendments, the United States Supreme Court in *Mahon v. Stowers*, 416 U.S. 100, 111, 94 S.Ct. 1626, 1631, 40 L.Ed.2d 79 (1974), held that the Packers and Stockyards Act and regulations issued pursuant thereto providing that sellers are to be paid by the close of the next business day after the livestock purchase, 9 C.F.R. § 201.43,

"[did] not necessarily support a conclusion that the regulation, designed to regulate payment procedures between a buyer and seller, was also intended to determine security rights between the sellers and third parties holding a valid [security interest under state law] on the packer's assets. Whatever might be the policy reasons for insuring that packers did not take unnecessary advantage of cattle sellers by holding funds for their own purposes, it is hard to see that those reasons would automatically require that such sellers stand on better footing than persons who have extended secured credit to a packer. And the regulation [9 C.F.R. § 201.43] in no way suggests an intention to override established principles of state commercial law which might strike a different balance."

On remand, the Court of Appeals for the Fifth Circuit in *Matter of Samuels, & Co., Inc.*, 526 F.2d 1238, 1248 (5th Cir. 1976), held that the unpaid seller's claim to his packer-buyer's livestock and proceeds was subordinate to the financer's perfected security interest based on Texas' version of the Uniform Commercial Code.

Pub.L. No. 94–410, amending the Packers and Stockyards Act in 1976, congressionally changed the choice of state law rule *Mahon* announced to determine the

priorities of claims against the packer's assets made by an unpaid cash seller under the Act and by an unpaid secured lender under the Uniform Commercial Code as adopted in the states. The *Mahon* Court had found "no evidence in either the Act or the regulations that packers are to hold cattle or carcasses in trust until the sellers actually convert into cash the checks given them as payment for each sale." *Id.,* 416 U.S. at 106–107, 94 S.Ct. at 1629. In 1976, the Act was amended to specifically create a statutory trust for the benefit of all unpaid cash sellers, 1976 U.S.Code Cong. and Admin.News at 2279, composed of livestock and proceeds therefrom until the packer pays for his purchases. 7 U.S.C. § 196(b). As beneficiaries of the statutory trust, Congress intended all unpaid cash sellers to satisfy their claims from the defaulting packer's assets (inventoried livestock transferred by cash sellers to the packer and accounts receivable and other proceeds of the sale of such livestock) prior to satisfying any Article 9 perfected security interest in those assets. *See,* 1976 U.S.Code Cong. and Admin.News at 2271, 2279. The choice of law rule this Court applies is as follows: To the extent plaintiff qualifies as a beneficiary of the statutory trust created by 7 U.S.C. § 196(b), the federal Act controls whether he has priority over defendant Continental Bank's claims to trust assets; to the extent plaintiff does not so qualify, Pennsylvania's version of Article 9 of the Uniform Commercial Code controls whether he has priority over the Bank's claims.

(4.4) Continental Bank contends that plaintiff was not a "seller" but an agent buying for SBI's account on June 1 and June 2, 1977, when he bought cattle at three livestock sales and received $3.00 per head commission. *See,* Answer of Continental Bank to Plaintiff's Cross-Motion for Summary Judgment at ¶ 2, Docket Entry No. 36. Unless he was a "seller," plaintiff was not entitled to next day payment under 7 U.S.C. § 228b and thus could have no interest in the statutory trust created by 7 U.S.C. § 196(b) for unpaid cash *sellers.*

As stated in ¶ 2.2, *supra,* after April 22, 1977, plaintiff bought livestock at auctions for SBI's account and was to receive $3.00 commission for every head of cattle purchased. The auction houses demanded payment from SBI soon thereafter. When SBI failed to pay, the auction houses looked to plaintiff for payment and he fully paid SBI's accounts.

While the regulations at 9 C.F.R. § 201.-43(c), give plaintiff even as a commission buyer, the rights of an unpaid cash seller against his packer-principal, SBI, *see,* ¶ 2.7, *supra,* nothing in the Act or regulations expressly settles the question of what rights an agent might have against a perfected secured lender like Continental Bank.

■ If he were an "unpaid cash seller" and gave notice to both SBI and the Packers and Stockyards Administration, plaintiff would have priority over the Bank by virtue of the statutory trust under 7 U.S.C. § 196. Assuming for this part of the opinion that the auction houses sold to plaintiff as SBI's agent on a "cash" not credit basis,[3] then the auction houses would initially be the "unpaid cash sellers" under 7 U.S.C. § 196(b) and would be entitled to a statutory trust consisting of the livestock they sold to SBI and any proceeds therefrom. Without an express agreement in writing to the contrary, the auction houses were entitled to next day payment from SBI. 7 U.S.C. § 228b(a). Had plaintiff not paid the auction houses for SBI's purchases and had they given SBI notice of the overdue payments and filed such notice with the Packers and Stockyards Administration, the auction houses would have priority over Continental Bank's perfected security interest in SBI's assets impressed with the Act's statutory trust.

■ A means exists to equitably place plaintiff in the position of the auction houses giving him the rights of a "seller" and, as ¶ 4.5, *infra,* suggests, the rights of an "unpaid cash seller." Pennsylvania case law is in accord with the following principles. *See, United States v. Certain Parcels Of*

---

3. *But see,* ¶ 4.5, *infra.*

*Land In The City Of Philadelphia*, 213 F.Supp. 904, 905 (E.D.Pa.1963).

> "Upon contracts made by an agent on the principal's [viz. SBI's] account, the agent is normally a secondary party and hence is entitled to the rights of a surety."

Restatement (Second) of Agency § 438, Comment a, para. 3 (1958). Even if plaintiff might not be expressly liable on the purchase contract with each auction house, he was so liable under his bonding requirement as a dealer. Deposition of Frank A. Fillippo at 78, Docket Entry No. 20; *see, Arnold Livestock Sales Company, Inc. v. Pearson*, 383 F.Supp. 1319, 1322 (D.Neb. 1974).

> "The right of exoneration exists where the agent becomes surety for goods bought on the principal's credit.[4] In addition to these rights, the agent may have an equitable right to be subrogated to the position of the person who had a claim against the principal which [claim] has been satisfied by the agent. This right arises only where the agent has completely satisfied the claim, and includes the right to have the advantage of any priority or lien held by the third person [viz. the auction houses]. See the Restatement of Restitution § 162."

Restatement (Second) of Agency § 438, Comment b. If Continental Bank is permitted to have priority over plaintiff's claims, not only will SBI have been unjustly enriched by using plaintiff's purchase money instead of its own and then refusing to reimburse plaintiff, but the Bank will have acquired an "unreasonable preference," 7 U.S.C. § 192(b), if it is permitted to claim the assets of the statutory trust before full payment has been received by *all* unpaid cash sellers. 7 U.S.C. § 196(b). Since plaintiff was not an officious intermeddler when he paid SBI's debt, he is entitled to be subrogated to the auction houses' statutory trust, if any.

> "A court of equity may give restitution to the plaintiff and prevent the unjust enrichment of the defendant, where the plaintiff's property [money] has been used in discharging an obligation owed by the defendant or a lien upon property [livestock and proceeds therefrom] of the defendant, by creating in the plaintiff rights similar to those which the obligee or lien-holder [the auction houses] had before the obligation or lien [here, the statutory trust] was discharged. In such a case the procedure is called subrogation, and the plaintiff is said to be subrogated to the position of the obligee or lien-holder. Although the obligation or lien has been discharged, the plaintiff can maintain a proceeding in equity to revive it for his benefit; in such a proceeding the court will create for the benefit of the plaintiff an equitable obligation or lien similar to that which was discharged."

Restatement of Restitution § 162, comment a (1937).

A genuine issue of fact material to whether plaintiff was a "seller" still exists: when did SBI receive notification that its debt with each auction house had been fully paid? *See,* ¶ 2.7, *supra.*

(4.5) Continental Bank contends that plaintiff was not a "cash seller" and thus is not entitled to participate in the statutory trust created by 7 U.S.C. § 196(b) for unpaid cash sellers of livestock. Answer of Continental Bank to Plaintiff's Cross-Motion for Summary Judgment at ¶ 6, Docket Entry No. 36; Reply Brief of Defendant Continental Bank In Support of Its Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motions for Summary Judgment at ¶ II(C), Docket Entry No. 37. Here numerous factual issues remain unsettled. The question of when SBI received notification that its debts with each auction house had been fully paid which determines the date as of which plaintiff was entitled to payment from SBI, 9 C.F.R. § 201.43(c), reemerges in determining what trust rights

---

**4.** The Court interprets "on the principal's credit" to mean on the principal's account. In order for SBI to buy "on credit" from the auction houses an express agreement in writing conforming with 7 U.S.C. § 228b(b) would have to appear in the parties' records. *See,* ¶ 4.5, *infra.*

plaintiff may have against Continental Bank. Within thirty days of such date plaintiff had to notify SBI and the Packers and Stockyards of SBI's failure to pay in order to preserve his trust rights under 7 U.S.C. § 196(b). The plaintiff has not by affidavit pursuant to Fed.R.Civ.P. 56(e), nor have the parties by stipulation put certain exhibits into evidence. Exhibit E supplementing Plaintiff's Memorandum of Authorities, Docket Entry No. 35; Exhibit A, Plaintiff's Reply Brief, Docket Entry No. 39. These exhibits attached to plaintiff's memoranda are not evidence on the record for purposes of summary judgment. *Kempinski v. Greene*, 189 F.Supp. 877, 878 (E.D. Pa.1960). Until Exhibit E, ·*supra*, or one like it containing a copy of the June 22, 1977 letter to Samuel Bonaccurso for SBI and marked filed by the Packers and Stockyards Administration is introduced into evidence, a genuine issue of material fact exists as to the date as of which plaintiff preserved his statutory trust under 7 U.S.C. § 196(b). Until Exhibit A, *supra*, or one like it containing a copy of checks written by plaintiff to the three auction houses is put on the record, a genuine issue of material fact exists as to the dates when plaintiff became subrogated to the trust rights, if any, of each auction house. Finally, a genuine factual issue exists not as to whether *plaintiff* preserved his statutory trust, but as to whether the *auction houses* involved in the June 1 and June 2, 1977, purchases were also "cash sellers" under the Act. Since subrogation is an equitable remedy, this Court would enforce an agreement by any or all of the auction houses which waived their rights to next day payment from SBI under 7 U.S.C. § 228b(b) and converted the "cash sales" into sales on credit under 7 U.S.C. § 196(c). Such an agreement would bind plaintiff as subrogee and would extinguish any statutory trust rights he might have had. The Court finds a genuine issue of material fact exists as to whether the auction houses, in whose shoes plaintiff stands as subrogee, made any express agreement in writing pursuant to 7 U.S.C. § 228b(b) to extend credit to SBI.

PART 5: *Motion Of Defendant Continental Bank For Summary Judgment Against Plaintiff, Docket Entry No. 24.*

It appearing that genuine issues of material fact exist, the motion of defendant Continental Bank for summary judgment against plaintiff is, by appropriate order following this memorandum, denied.

(5.1) The same rule for deciding motions for summary judgment recited in ¶ 2.1, *supra*, is used to decide defendant Continental Bank's motion for summary judgment against plaintiff.

(5.2) The facts presented in the pleadings and those in other sources considered on motions for summary judgment under Fed. R.Civ.P. 56 recited in ¶ 2.2, *supra*, are used to decide defendant Continental Bank's motion for summary judgment against plaintiff.

(5.3) In ruling on Continental Bank's motion for summary judgment, the Court applies the same choice of law rule announced in ¶ 4.3, *supra*, *viz.*: To the extent plaintiff qualifies as a beneficiary of the statutory trust created by 7 U.S.C. § 196(b), the federal Act controls whether he has priority over defendant Continental Bank's claims to trust assets; to the extent plaintiff does not so qualify, Pennsylvania's version of Article 9 of the Uniform Commercial Code controls whether he has priority over the Bank's claims.

(5.4) It is clear that between April 6 and April 22, 1977, while on a "dressed weight" basis, plaintiff was a "seller" under the Act. From approximately the week after April 22, 1977, through June 2, 1977, plaintiff bought cattle on commission as SBI's agent. From the day after SBI received notification that its accounts for commission purchases on June 1 and 2, 1977, had been paid, plaintiff was in the position of a "seller." As the Court found in ¶ 4.4, *supra*, a genuine issue of material fact remains as to when SBI received such notification. 9 C.F.R. § 201.43(c).

(5.5) Although plaintiff may be subrogated to the rights of a "seller" upon proof of when SBI received notification that certain

of its accounts had been paid, genuine issues of material fact exist as to whether he was a "cash seller." These issues include: when did plaintiff notify both SBI and the Packers and Stockyards Administration that SBI was delaying payment, when did plaintiff pay each auction house involved in his June 1 and 2, 1977, commission purchases as SBI's agent, and finally, did these auction houses expressly agree in writing to waive their rights to next day payment from SBI. *See,* ¶ 4.5, *supra.*

An appropriate order is entered.