**In re MILTON POULOS, INC., Debtor.**

**C & E ENTERPRISES, INC., dba Koyama Farms, a California corporation; Pleasant Valley Vegetable Cooperative, a California corporation; Teixeira Farms, Inc., a California corporation; and Maulhardt–Stiles Co., a partnership, Plaintiffs,**

v.

**MILTON POULOS, INC., Defendant.**

**Bankruptcy Nos. LA 87–21451–NCA, M7–09606–NCA.**

United States Bankruptcy Court, C.D. California.

Sept. 30, 1988.

Creighton A. Stephens, Agoura Hills, Cal., for debtor/defendant.

## MEMORANDUM OF DECISION

CALVIN K. ASHLAND, Bankruptcy Judge.

Creditors seek relief from the automatic stay and release of property not belonging to the estate based on a trust established by the Perishable Agricultural Commodities Act ("PACA"). Creditors claim the PACA trust assets are not part of the bankruptcy estate and are subject to distribution to trust beneficiaries outside the distribution contemplated in bankruptcy. Creditors also seek prejudgment and post-judgment interest, attorneys fees, and reasonable costs as part of their trust claim.

## FACTS

Milton Poulos Inc. ("MPI"), filed for relief under Chapter 11 of the Bankruptcy Code on October 21, 1987. MPI is the debtor in possession of a business engaged in purchasing fruit and vegetables from many growers and distributors. In order to satisfy unpaid claims, these suppliers now seek to assert their rights to assets established as a statutory trust by the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c).

The creditors and their alleged trust claims are as follows: Koyama Farms, $100,283.70; Pleasant Valley Vegetable Co-op, $85,406.25; Teixeira Farms, Inc., $13,-931.00; Maulhardt–Stiles Co., $19,976.15; Veg-a-mix, $133,673.60; and Florence Distributing, $128,311.69; (hereinafter "unpaid creditors").

Several other unpaid sellers with potential trust claims exist but are not participating in this motion. Mitsubishi Bank and American Commercial Bank, both secured creditors, as well as the debtor, oppose this motion contending, among other things, that the PACA trust is an impermissible secret lien.

Lewis P. Janowsky, Rynn & Janowsky, and Marion I. Quesenbery, Dressler & Quesenbery, Newport Beach, Cal., for plaintiffs.

## ISSUES

I. Is the trust valid?

II. If so, what constitutes the corpus of the trust?

III. Are the trust assets part of the bankruptcy estate?

IV. Is the trust group entitled to relief from the automatic stay, the release of property not belonging to the estate, and the award of prejudgment and post-judgment interest, attorneys fees, and reasonable costs?

## DISCUSSION

The PACA trust was established by Congress to protect sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received. The trust is a statutory trust which operates in favor of all unpaid suppliers, sellers, and agents ("sellers") of perishable agricultural commodities. Sellers, in order to preserve their interests in the trust, must give written notice to the debtor and file notice with the Secretary of Agriculture within a specified time period.

## I. THE TRUST IS A VALID STATUTORY TRUST ENFORCEABLE IN BANKRUPTCY PROCEEDINGS.

### A. *The PACA's Trust Provisions Are Constitutional.*

■ In 1984, Congress enacted a statute establishing a trust to protect sellers of perishable agricultural commodities. Congress found that:

[A] burden on commerce in perishable agricultural commodities is caused by *financing arrangements* under which commission merchants, dealers, or brokers, *who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them* on behalf of another person, *encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commod-*

*ities or products,* and that such arrangements are contrary to the public interest.

7 U.S.C. § 499e(c)(1) (emphasis added).

In 1976, Congress, after making a similar finding with regard to commerce in livestock, established a statutory trust under the Packers and Stockyards Act, 7 U.S.C. § 196 ("PSA"). The PACA's legislative history indicates that courts are to look to case law developed under the PSA for guidance as to proceedings arising under the PACA. *In re Fresh Approach, Inc.,* 51 B.R. 412, 419, n. 4 (Bankr.N.D.Tex.1985). The PSA's trust provisions state that:

All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, *shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers.*

7 U.S.C. § 196(b) (emphasis added). The PACA's trust provisions are essentially identical to those establishing the PSA trust. *See* 7 U.S.C. § 499e(c)(2).

The constitutionality of the PSA trust has been challenged and upheld. *Fillippo v. S. Bonaccurso & Sons, Inc.,* 466 F.Supp. 1008 (E.D.Pa.1978); *In re Frosty Morn Meats, Inc.,* 7 B.R. 988 (Bankr.M.D.Tenn. 1980). In *Fillippo,* the court, responding to creditor Continental Bank's attack on the constitutionality of the PSA, stated that:

[T]he Court finds no constitutional impediment to Congress' action in creating the statutory trust of 7 U.S.C. § 196. In September, 1976, Congress amended the [PSA] to create a trust for unpaid sellers of livestock. *The Bank's security interest did not attach until its debtor,* SBI [i.e., S. Bonaccurso & Sons, Inc.], *acquired rights in the collateral,* viz., in June, 1977, when plaintiff transferred livestock to SBI's possession. Pa.Stat. Ann. tit. 12A § 9–203(1). *At the very same moment, the livestock and any proceeds therefrom became impressed with a superseding statutory trust for plaintiff's benefit arising under federal*

*law.* The Bank's security interest was *limited at all times* by Pa.Stat.Ann. tit. 12A § 9–104. The Packers and Stockyards Act, 7 U.S.C. § 196, "governs the rights of parties to and third parties affected by transactions in particular types of property." *Pennsylvania's commercial law impaired Continental Bank's rights to collateral* (livestock inventory, receivables and other proceeds therefrom) *which is excluded from Article 9 of Pennsylvania's version of the Uniform Commercial Code. Congress denied no process due and impaired no obligation of contract* but merely used the exclusion of the Uniform Commercial Code's § 9–104(a) to subject a particular type of property, livestock, bought and sold in interstate commerce to a statutory trust and thereby to a federal schedule of priorities among claimants.

*Id.* at 1012, n. 2 (emphasis added).

The *Fillippo* court's constitutional analysis is applicable to cases arising in California. California's version of the Uniform Commercial Code ("UCC") states that the UCC's secured transactions division (i.e., Article 9 of the UCC) *does not apply* "to a security interest *subject to any statute of the United States to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property.*" Cal. Com.Code § 9104 (West Supp.1988) (emphasis added). Since California's version of U.C.C. § 9–104 is essentially identical to Pennsylvania's version, the Fillippo court's analysis is applicable in California cases.

The constitutionality of a PSA trust was again challenged in *Frosty Morn.* In that case, the district court stressed the federal pre-emption doctrine and stated that the trust did not "violate any constitutionally protected rights of holders of liens on assets of meatpackers." *Id.* at 1003. Therefore, since (1) the PSA's trust provisions are constitutional and (2) the PACA's trust provisions are essentially identical to the those of the PSA, the PACA trust provisions are constitutional.

**B.  *PACA Trust Beneficiaries' Rights are Enforceable in Bankruptcy Proceedings.***

In *First State Bank v. Gotham Provision Co. (In re Gotham Provision Co.),* 669 F.2d 1000 (5th Cir. Unit B), *cert. denied,* 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982), the court upheld the application of the PSA trust in bankruptcy proceedings. The court stated that:

> According to general principles of trust law, . . ., where trust funds are commingled with funds not subject to the trust, a lien on the entire commingled fund exists for the benefit of the beneficiaries of the trust, and those who receive a transfer of assets from the commingled fund with actual or constructive notice of the trust are subject to the lien. Scott, *The Law of Trusts,* §§ 219.4, 519.1 (3d ed. 1967). In this case, the Bank had constructive notice of the trust because a federal statute created the trust.

*Id.* at 1011.

Furthermore, § 541 of the Bankruptcy Code specifically excludes PSA (and by analogy PACA) trust assets from the bankruptcy estate. Section 541(d) states that:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, becomes property of the estate under subsection (a)(1) or (2) of this section *only to the extent of the debtor's legal title to such property,* but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541 (emphasis added).

Finally, section 541's legislative history indicates that PSA and PACA trust assets are not part of the bankruptcy estate.

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a

constructive trust for the person to whom the bill was owed. This section and proposed 11 USC 545 also *will not affect* various statutory provisions that give a creditor of the debtor a lien that is valid *outside as well as inside bankruptcy, or that creates a trust fund for the benefit of a creditor of the debtor. See Packers and Stockyards Act § 206, 7 USC 196.*

H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6324; S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868 (emphasis added).

The preceding discussion leads to the conclusion that the PACA is a valid statutory trust enforceable in bankruptcy proceedings. First, Congress directed courts to look to case law developed under the PSA for guidance as to proceedings arising under the PACA. Second, the legislative history of § 541, together with relevant case law, indicate the PSA is a valid statutory trust enforceable in bankruptcy proceedings. Finally, the PACA's trust provisions are essentially identical to the PSA's trust provisions. Therefore, by analogy, the PACA is a valid statutory trust enforceable in bankruptcy proceedings. The court in *Fresh Approach* clearly stated the rationale for permitting the enforceability of statutory trusts, like the PSA and the PACA, in a bankruptcy proceeding:

> It must be remembered that PACA was not enacted to protect those in [d]ebtor's shoes, but rather to prevent the chaos and disruption in the flow of perishable agricultural commodities sure to result from an industry-wide proliferation of unpaid obligations. While in isolation this may seem a harsh course to follow, in the macroeconomic sense PACA serves to ensure continuity of payment and therefore survival of the industry. Congress has plainly decided it would be less disastrous to risk the liquidation of a single purchaser than to threaten the entire production chain with insolvency.

It is not the function of this [c]ourt to pass upon the wisdom of that decision. *Id.* at 420.

## II. THE TRUST CONTAINS ALL INVENTORIES OF FOOD OR OTHER PRODUCTS DERIVED FROM PERISHABLE AGRICULTURAL COMMODITIES, AND ANY RECEIVABLES OR PROCEEDS FROM THE SALE OF SUCH COMMODITIES OR PRODUCTS.

Title 7 U.S.C. § 499e(c)(2) states that:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and *all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products*, shall be held by such commission merchant, dealer, or broker *in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing* in connection with such transactions *has been received* by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e (emphasis added).

Similarly, 7 C.F.R. § 46.46 states that the corpus of the trust "is made up of perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and *all receivables or proceeds from the sale of such commodities and food or products derived therefrom.*" 7 C.F.R. § 46.46 (1988) (emphasis added). Therefore, the trust consists of perishable agricultural commodities and any food or product derived from the agricultural commodity.

In addition, trust assets do not have to be separated from the debtor's other assets nor do they have to be labeled as "trust assets." *See Fresh Approach* at 422. The regulations state that "[t]rust assets are to be preserved as a nonsegregated 'floating' trust. Commingling of trust assets is contemplated." 7 C.F.R. § 46.46 (1988). Furthermore, the debtor or bankruptcy trust-

ee, rather than the trust beneficiary, is responsible for determining which assets, if any, are not subject to the trust. *Fresh Approach* at 422; *Frosty Morn* at 1013. Therefore, the trust applies to all of the debtor's inventory of perishable agricultural commodities, in raw or processed form, and to the products, receivables, and proceeds derived from such commodities.

## III. PACA TRUST ASSETS ARE NOT PART OF THE BANKRUPTCY ESTATE.

■ "Property held in trust by a bankruptcy debtor belongs to the beneficiary of the trust." *In re Bullion Reserve of North America,* 836 F.2d 1214 (9th Cir.), *cert. denied sub nom., Bozek v. Danning,* — U.S. ——, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). Furthermore, case law interpreting § 541 of the Bankruptcy Code has consistently held that PACA trust assets are not part of the bankruptcy estate. *Fresh Approach; In re Monterey House,* 71 B.R. 244 (Bankr.S.D.Tex.1986); *In re W.L. Bradley,* 75 B.R. 505 (Bankr.E.D.Pa. 1987); *In re Super Spud, Inc.,* 77 B.R. 930 (Bankr.M.D.Fla.1987) and *In re Al Nagelberg & Co, Inc.,* 84 B.R. 19 (Bankr.S.D.N.Y.1988). Therefore, PACA trust assets are not part of the bankruptcy estate.

## IV. THE COURT GRANTS THE TRUST GROUP'S MOTION FOR RELIEF FROM AUTOMATIC STAY AND RELEASE OF PROPERTY NOT BELONGING TO THE ESTATE.

■ The PACA requires unpaid sellers to preserve their trust benefits by giving *written notice,* to both the Secretary of Agriculture *and* the debtor, of their intent to preserve the benefits of the trust. 7 U.S.C. § 499e(c) (emphasis added). The regulations state that:

> Notice of intent to preserve benefits under the trust must be in writing, given to the debtor, and filed with the Secretary *within 30 calendar days:* (i) After expiration of the time prescribed by which payment must be made pursuant to regulation. (ii) *After expiration of such oth-*

*er time by which payment must be made as the parties have expressly agreed to in writing* before entering into the transaction, ... or (iii) After the time the supplier, seller or agent has received notice that a payment instrument promptly presented for payment has been dishonored.

7 C.F.R. § 46.46 (1988) (emphasis added). Thus, unpaid sellers can enforce their beneficiary rights under the PACA trust only if they give notice of their intent to preserve their trust benefits to both the Secretary of Agriculture *and* the debtor. *In re Marvin Properties, Inc.,* 76 B.R. 150 (Bankr. 9th Cir.1987), *aff'd,* 854 F.2d 1183 (9th Cir. 1988). Thus, the unpaid creditors that have duly perfected their trust benefits by filing the requisite notice as determined by the U.S. Department of Agriculture have enforceable claims.

■ Finally, the court denies the award of any interest, fees and costs. Assuming the court has the equitable power to grant the unpaid creditors' claims, the court has determined that awarding interest, fees, and costs would unfairly deplete the bankruptcy estate at the expense of all other creditors. Therefore, the unpaid creditors are only entitled to enforcement of their rights established by the PACA.

## CONCLUSION

The PACA establishes a valid statutory trust in favor of unpaid sellers of perishable agricultural commodities. The trust consists of all inventories of food or other products derived from perishable agricultural commodities and any receivables or proceeds from the sale of such commodities or products. It does not matter whether the trust beneficiary or another seller was the source of the inventory or proceeds, the trust applies to *all* the debtor's produce related inventory and proceeds. Trust assets are not a part of the bankruptcy estate. The unpaid creditors that have complied with the statutory notice requirements are entitled to enforcement of their rights established by the PACA. The court denies the award of any interest, fees and costs.

This memorandum of decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. A separate order will be entered.