**In re SOUTHLAND + KEYSTONE, a California corporation, Debtor.**

**BANK OF LOS ANGELES, Appellant,**

**v.**

**OFFICIAL PACA CREDITORS' COMMITTEE, Appellee.**

**BAP Nos. CC–90–2253–JVO, CC–91–1002–JVO.**

**Bankruptcy No. LA 87–11987 CA.**

**Adv. No. LA 89–2082 CA.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 19, 1991.

Decided Oct. 25, 1991.

Steven N. Richman, Los Angeles, Cal., for appellant.

Alan D. Smith, Los Angeles, Cal., for appellee.

Before JONES, VOLINN and OLLASON, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge.

### OVERVIEW

The bankruptcy court awarded summary judgment in favor of Appellees, determining that they were entitled to the debtor's accounts receivable that had been collected by Appellant bank and awarding prejudgment interest to Appellees, but not attorney's fees. Appellant bank alleges that the

court lacked jurisdiction to determine the dispute; that the court erred by granting summary judgment in favor of Appellees; that the court erred both in awarding prejudgment interest to Appellees and in determining the amount of such interest; and that the court erred in not allowing Appellant to offset the fees and costs it incurred in collecting the accounts receivable against the amount of the judgment. Appellees cross appeal the court's decision not to award attorney's fees. For the reasons set forth below, we AFFIRM.

## FACTUAL BACKGROUND

■ Debtor Southland + Keystone's ("Debtor") primary business and main source of income was the purchase and resale of agricultural commodities. Both purchase and resale of the commodities occurred within and without California although the bulk of the transactions occurred entirely within California. The Debtor was licensed as a commission merchant, dealer or broker by the United States Department of Agriculture ("USDA") under the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a–499s ("PACA"). Under PACA, commodities and the proceeds thereof sold to licensed dealers or brokers are impressed with a trust in favor of the sellers of the commodities. The claimants to the trust assets have a claim superior to lenders with a blanket security interest in a debtor's inventory, accounts receivable, and other property.

In December of 1986, Appellant Bank of Los Angeles ("Bank" or "Appellant") extended a $500,000.00 line of credit to the Debtor. The line of credit was secured by essentially all of the Debtor's assets, including its accounts receivable. The Bank asserts that it was assured by the USDA that inventory and receivables from transactions that occur entirely within a single state are not subject to the claims of PACA creditors. The Bank further asserts that before it extended credit to the Debtor, the Bank assured itself that approximately 90% of the Debtor's business was entirely intrastate. The Bank claims that it would not have made the loan absent the assurances provided by the USDA.

The Debtor promptly drew down the entire line of credit. When the Debtor defaulted on its obligations to the Bank on or about March 31, 1987, the Bank began seizing and liquidating its collateral. Between May and September of 1987, the Bank collected $403,527.30 of the Debtor's accounts receivable. The Bank was paid in full (and may hold a surplus) from its collection of the receivables and other collateral.

Meanwhile, on June 12, 1987 the Debtor filed its petition under Chapter 11 of the Bankruptcy Code. A committee representing PACA claimants ("Committee") (the Committee is the Appellee/Cross Appellant in the instant appeal) was not formed until September 1, 1989. On October 16, 1989 the Committee filed a complaint against the Debtor and the Bank, seeking (1) a declaration that all monies collected by the Debtor and the Bank from the Debtor's receivables were PACA trust funds, and (2) an order directing the Debtor and the Bank to disgorge those funds and pay them over to the Committee.

The Bank filed a motion to dismiss the complaint or, in the alternative, to abstain from exercising jurisdiction over the proceeding ("Motion to Dismiss"). The Bank asserted that the court lacked jurisdiction to resolve the dispute because (1) only Article III courts can adjudicate PACA issues, and (2) the proceeding was neither a core nor a related proceeding. The Bank's answer and counterclaims indicate a belief that the court had jurisdiction over the proceeding. The Bank's Motion to Dismiss was subsequently denied.

On June 20, 1990, the Committee filed a Motion for Summary Judgment. The Committee argued that there were no genuine issues of material fact and that, as a matter of law, PACA imposed a trust upon the Debtor's accounts receivable collected by the Bank which took priority over the Bank's security interest. The Bank opposed the Motion for Summary Judgment. The court held for the Committee but denied the Committee's request for attorney's fees. A judgment supported by findings of

fact and conclusions of law was entered on December 13, 1990. The Bank timely filed a notice of appeal on December 21, 1990.

### ISSUES/STANDARDS OF REVIEW

■ 1. Whether the bankruptcy court had jurisdiction to determine the issues raised in the adversary proceeding commenced by the PACA Committee. Jurisdictional issues are reviewed de novo. *In re Castlerock Properties,* 781 F.2d 159, 161 (9th Cir.1986).

■ 2. Whether the bankruptcy court properly awarded summary judgment in favor of the Committee, allowing the recovery of the Debtor's accounts receivable. The Panel reviews summary judgments de novo. *In re Hyman,* 123 B.R. 342, 344 (9th Cir. BAP 1991). "A summary judgment may be affirmed only if it appears, after reviewing all evidence and factual inferences in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

■ 3. Whether the bankruptcy court properly awarded to the Committee and calculated prejudgment interest. We review the bankruptcy court's decision to award prejudgment interest for an abuse of discretion. *See United States v. Imperial Food Imports,* 834 F.2d 1013, 1016 (Fed.Cir.1987); *Vance v. American Hawaii Cruises, Inc.,* 789 F.2d 790, 794 (9th Cir. 1986).

■ 4. Whether the bankruptcy court properly denied Appellant an offset for the collection costs it incurred collecting the Debtor's receivables. We review the bankruptcy court's decision regarding the allowance of an offset for an abuse of discretion. *See Melamed v. Lake County National Bank,* 727 F.2d 1399, 1404 (6th Cir.1984).

5. Whether the bankruptcy court properly denied the Committee's request for attorney's fees. "'A bankruptcy court's award of attorneys' fees will not be disturbed on appeal absent an abuse of discretion or an erroneous application of the law.'" *In re Riverside–Linden Inv. Co.,*

925 F.2d 320, 322 (9th Cir.1991) (quoting *In re Nucorp Energy, Inc.,* 764 F.2d 655, 657 (9th Cir.1985)).

### DISCUSSION

#### 1. Jurisdiction

Appellants argue that the bankruptcy court did not have jurisdiction over the adversary proceeding commenced by the Committee because (1) it was neither a core nor a related proceeding over which the court could exercise jurisdiction under Bankruptcy Code section 157(b), and (2) PACA actions can only be brought in the district court. We conclude that the court had jurisdiction over this matter.

##### a. The Proceeding Is a Core Proceeding

What constitutes a "core" proceeding is addressed in 28 U.S.C. § 157(b)(2). Under this provision, core proceedings include, but are not limited to:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate ...

. . . . .

(K) determination of the validity, extent or priority of liens ...

. . . . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship....

■ Appellant argues that this is not a core proceeding because the only dispute is whether Appellant or the PACA claimants are entitled to the Debtor's accounts receivable. Appellant asserts that the Debtor will not recover any of the money in either case. Thus, according to Appellant, this is not a dispute over property of the estate or anything that can affect the estate.

Appellant points to two factors supporting this argument: First, it cites cases stating that PACA proceeds are not property of the estate. *See, e.g., In re Milton Poulos, Inc.,* 94 B.R. 648, 653 (Bankr.C.D.Cal. 1988), *aff'd,* 107 B.R. 715 (9th Cir. BAP 1989), *aff'd in part, rev'd in part,* 947 F.2d

1351 (9th Cir.1991); *In re Fresh Approach, Inc.*, 51 B.R. 412, 418–422 (Bankr.N.D.Tex. 1985). Second, Appellant claims that it collected the receivables prepetition lawfully, pursuant to California law.

Appellant's position is untenable for two reasons. First, that PACA proceeds are not property of the estate does not mean the bankruptcy court does not have jurisdiction to make that determination. Under Appellant's reasoning, any bankruptcy court order determining that assets are not property of a bankruptcy estate would be of no effect because the court would not have had jurisdiction to enter the order. Clearly, a determination of whether assets are property of a bankruptcy estate concerns administration of the estate. *See* 28 U.S.C. § 157(b)(2)(A).

Second, Appellant's claim that it collected the receivables prepetition is both inaccurate and irrelevant. The record indicates that the receivables were collected between May and September of 1989. The Debtor filed its petition on June 12, 1989. Thus, at least some, and perhaps most, of the receivables were collected post-petition. Interestingly, Appellant never sought relief from the stay to do this for reasons not stated in the record.

Moreover, in the cases cited by Appellant, the bankruptcy courts exercised jurisdiction over the determination of whether the proceeds and receivables at issue were PACA proceeds and therefore assets of the estate. *See Poulos*, 94 B.R. 648, 653 (not discussing jurisdictional issues); *Fresh Approach*, 51 B.R. at 417–418. The latter court discussed at length whether a PACA proceeding was a core proceeding and concluded: "It should be obvious that the present proceeding is one which adjusts the debtor-creditor relationship, and which is therefore a core proceeding under [section 157(b)(2)(0) ]." *Fresh Approach*, 51 B.R. at 418.

Appellant argues that these cases are distinguishable from the instant case because there the debtors possessed the receivables and produce at issue, whereas here Appellant had executed upon the re-

ceivables when the bankruptcy was filed. As noted above, however, Appellant continued to collect receivables long after the Debtor filed its petition.

Even had Appellant collected all of the receivables at issue before the Debtor filed its petition, the receivables would be property of the estate. In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Court held that property seized by the I.R.S. prepetition was property of the Chapter 11 estate and could be recovered by the debtor under Bankruptcy Code section 542(a). *Id.* Thus, property of a debtor that is seized by a creditor prior to the debtor filing bankruptcy is property of the estate. As a result, Appellant's argument that the bankruptcy court did not have jurisdiction to determine the instant adversary proceeding is without merit.

### b. PACA Actions May Be Brought in Bankruptcy Court

Appellant next argues that only the district court, and not the bankruptcy court, can preside over litigation concerning PACA. This argument also is without merit.

First, it is well settled that federal and state courts have concurrent jurisdiction to try cases involving federal claims unless Congress expressly makes federal jurisdiction exclusive. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–478, 101 S.Ct. 2870, 2874–75, 69 L.Ed.2d 784 (1981). Neither the general federal court enabling statute covering interstate commerce matters, 28 U.S.C. § 1337(a), nor the enabling statute in PACA, 7 U.S.C. § 499e(c)(4), provide for exclusive federal jurisdiction. Thus, jurisdiction over claims arising under PACA is concurrent, not exclusive.

Second, even if jurisdiction over PACA matters is exclusive in federal district courts, there is no reason that such matters would not be referred to the bankruptcy court by a general order of reference if they are otherwise within the latter court's jurisdiction over bankruptcy, cases

and proceedings. It may be appropriate for the bankruptcy court to abstain from hearing the matter or for the district court to withdraw the reference. That, however, does not mean the bankruptcy court lacks jurisdiction to resolve the proceeding.

▪ Finally, Appellant argues that the bankruptcy court should have abstained from hearing the adversary proceeding. Appellant, however, provides no substantive reasons or case authority demonstrating that the bankruptcy court should have abstained from hearing the adversary proceeding. Appellant merely states that the bankruptcy court should have allowed the district court "to decide the complex issues of interstate commerce resulting from this case...." There is no basis for determining that the trial court erred in refusing to abstain.

### 2. Summary Judgment

#### a. The PACA Trust Fund

▪ The PACA trust is a statutory trust fund established by Congress that operates in favor of all unpaid suppliers or sellers of perishable agricultural commodities. It "was established by Congress to protect sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received." *Poulos*, 94 B.R. at 650. In enacting PACA, Congress specifically made the following findings:

> It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

7 U.S.C.S. § 499e(c)(1) (Law.Co-op.Supp. 1991). To implement this policy, Congress created the PACA trust:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker *in all transactions, and all inventories of food or other products* derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents....

7 U.S.C.S. § 499e(c)(2) (Law.Co-op.Supp. 1991) (emphasis added). Any supplier or seller of agricultural commodities who gives proper notice of its interest in the PACA trust has a claim against the trust res. *See Poulos II*, 107 B.R. at 717. The trust res includes all agricultural commodities supplied to the merchant, dealer or broker and the proceeds thereof regardless of whether these assets have been segregated. *Id.* at 717–718. The assets that make up the trust are not property of the merchant, dealer or broker's bankruptcy estate. *Id.* at 718.

#### b. Interstate versus Intrastate Transactions

The trial court in the case at bar concluded (1) the Debtor's "transactions in perishable agricultural commodities were intended to be and were within interstate commerce ...;" (2) the financing arrangement between Appellant and the Debtor is the type of transaction "against which unpaid suppliers of produce are intended to be protected" by PACA; and (3) "[t]he funds collected by [Appellant] on account of the accounts receivable of [the Debtor] are PACA trust funds pursuant to the PACA Trust Provisions." Apt.E.R. 24 at 10–11.

Appellant argues that the trial court erred in these conclusions because a majority of the transactions giving rise to the receivables it collected related to solely intrastate dealings and that, as a result, PACA does not apply to the receivables. Specifically, Appellant asserts that 94% of the receivables were paid by sources within California, that the Debtor purchased a "clear majority" of its produce within California, and that it sold 99% of the produce to California restaurants. Apt.Brief at 16.

Section 499e(c)(2) provides that commodities, products derived from commodities and receivables derived from commodities "in all transactions" are subject to the PACA trust. Appellant argues that this reference to "all transactions" is limited to transactions involving commodities that actually cross state lines. Appellant points to PACA section 499a(3) which defines "interstate or foreign commerce" as follows:

The term "interstate or foreign commerce" means commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, the District of Columbia but through any place outside thereof; or within the District of Columbia.

7 U.S.C.S. § 499a(3) (Law.Co-op.1978). According to Appellant, this provision limits the application of the PACA trust to commodities that actually cross state lines.

We disagree. PACA section 499a(8) provides:

A transaction in respect of any perishable agricultural commodity shall be considered in interstate or foreign commerce if such commodity is part of that current of commerce usual in the trade in that commodity whereby such commodity and/or the products of such commodity are sent from one State with the expectation that they will end their transit, after purchase, in another, including, in addition to cases within the above general description, all cases where sale is either for shipment to another State, or for processing within the State and the shipment outside the State of the products

resulting from such processing. Commodities normally in such current of commerce shall not be considered out of such commerce through resort being had to any means or device intended to remove transactions in respect thereto from the provisions of this Act. . . .

7 U.S.C.S. § 499a(8) (Law.Co-op.1978). Several factors support the conclusion that this section, and not section 499a(3), is the provision that defines the scope of transactions covered by the PACA trust.

First, section 499e(c)(2), which creates the PACA trust fund, refers to "all transactions" not "all interstate transactions." If Congress meant to use the narrow definition urged by Appellant, it would have used the latter phrase, not the former.

Second, section 499a(8) modifies and refines the definition of "interstate and foreign commerce" in section 499a(3) by providing which commodities "shall be *considered* in interstate or foreign commerce." The definition in subsection (8) is essentially consistent with the broad definitions of interstate commerce developed by the Supreme Court. *See, e.g., Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 258, 85 S.Ct. 348, 358, 13 L.Ed.2d 258 (1964). In determining which commodities are included in the PACA trust, it makes little sense only to look at subsection (3) and to ignore subsection (8).

Finally, a broad definition of transactions that are to be included in the PACA trust is consistent with Congress' attempt to remedy a serious burden on interstate commerce, even at the expense of secured lenders. The statement of findings quoted above makes clear that Congress was aware of the impact the statute would have on secured lenders. Indeed, the finding indicates that blanket security interests that prevent sellers and suppliers from receiving payment for produce were the source of the "burden of commerce" that Congress sought to remedy by enacting PACA.

Moreover, limiting coverage of the trust to transactions in which goods actually cross state lines would place a tremendous burden on the parties Congress sought to

protect. A grower who sells commodities to an in-state dealer would have to verify that the commodities would eventually cross state lines or would be uncertain whether PACA would apply. It is very unlikely that Congress would create a remedial statute such as PACA, then place such a burden on the parties it is trying to protect.

The trial court relied upon subsection (8) in determining that all of the Debtor's produce transactions and the resulting receivables are subject to the PACA trust because the commodities involved are the type typically sold in interstate commerce and because the sellers involved are the type that Congress intended to protect by implementing PACA. All the Debtor's transactions would therefore be covered by PACA. As a result, there are no material issues of fact regarding the percentage of intra- versus inter-state transactions. Summary judgment in favor of the Committee was thus appropriate.

### 3. Prejudgment Interest

#### a. Award of Interest

The Bank argues that because PACA does not provide for an award of prejudgment interest, interest should not be awarded and, further, that an award of interest would be inequitable. The Committee responds that the bankruptcy court properly exercised its discretion in awarding prejudgment interest in this case.

Under federal law, courts may allow prejudgment interest even though a governing statute is silent regarding such interest. *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1550 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990); *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1274–75 (3d Cir.1987). An award of interest in an action arising under a federal statute is a matter of federal law. *Poleto*, 826 F.2d at 1274. The purpose of such interest is to compensate the prevailing party for the loss of use of money from the time the claim accrues until judgment is entered. *West Virginia v. United States*,

479 U.S. 305, 310–311 n. 2, 107 S.Ct. 702, 706 n. 2, 93 L.Ed.2d 639 (1987). An award of interest should be based upon the equities of the case and a plaintiff's delay in filing an action may be considered by the court. *See Michaels v. Michaels*, 767 F.2d 1185, 1204 (7th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986). The trial court abuses its discretion by awarding prejudgment interest that amounts to a penalty. *Columbia Brick Works, Inc. v. Royal Ins. Co. of America*, 768 F.2d 1066, 1068 (9th Cir.1985).

In the case at bar, the trial court did not abuse its discretion in awarding the Committee prejudgment interest. The Bank collected the Debtor's receivables between May and September of 1987. At least one demand letter was sent to the Bank making a PACA claim on or about May 29, 1987. Since that time, the Bank has had possession and use of the money and the PACA claimants have not. Thus, the purpose justifying an award of prejudgment interest is present—compensation to the claimants for the loss of use of the money that the Bank has enjoyed.

Contrary to Appellant's assertions, "equitable" factors do not indicate that the award of interest was inequitable. The Bank opposed turning over the money in good faith; that is, it had a legitimate argument for not turning over the money. This, however, does not mean that the parties who ultimately are held entitled to the money should not receive interest in order to be made whole. Moreover, the Bank was made aware of the PACA claims in May of 1987 and was aware of PACA when it made the loan to the Debtor. Finally, the Committee was not formed until September of 1989. The Committee commenced the adversary proceeding about 45 days later on October 16, 1989. Thus, the Committee acted promptly once it was formed. These "equitable considerations" do not suggest that the trial court abused its discretion by awarding prejudgment interest.

Finally, Appellant claims that it was denied an opportunity to brief the issue of whether prejudgment interest should have

been allowed at all. This argument is frivolous. At the hearing on the Motion for Summary Judgment, counsel for the Bank stated that issues regarding prejudgment interest "have been fully addressed in the moving and opposing papers, and that no further briefing need be taken." Ape.E.R. at 41:20–22. Thus, the court did not deny Appellant an opportunity to brief prejudgment interest issues.

#### b. Interest Rate and Commencement Date

■ Both the appropriate rate and the commencement date for an award of prejudgment interest is left to the broad discretion of the trial court. *Columbia Brick Works,* 768 F.2d at 1068. The bankruptcy court awarded the Committee interest at the federal judgment rate commencing May 27, 1987, the date the notice of intent letter was sent to the Bank by one of the PACA claimants.

■ Counsel for the Committee indicated at oral argument that prejudgment interest was calculated from the date the Bank collected receivables rather than from the date of the demand letter. Awarding interest from the date the Bank collected the receivables does not penalize the Bank yet still compensates the Committee members for the delay in receiving their money. Thus, we conclude that the trial court did not abuse its discretion by awarding the Committee interest for the entire time the Bank held the money it collected from the Debtor's receivables.

■ We also affirm the trial court's use of the federal judgment interest rate. Appellant asserts that the court erred by allowing compounding of interest. Yet, the federal interest statute, 28 U.S.C. § 1961, specifically provides for such compounding. Thus, the compounding was not improper and there is no basis for concluding that the trial court abused its discretion by selecting the federal judgment rate of interest.

#### 4. Offset of the Bank's Collection Costs

The Bank's final argument on appeal is that it should have been allowed to set-off its collection costs against the judgment awarded to the Committee. The Bank further asserts that there was a triable issue of fact regarding the amount of these costs. The Committee responds that the court properly declined to allow the Bank a setoff for the collection costs because it was not acting in a trustee capacity and because it strenuously resisted turning over the funds. The findings and conclusions entered by the court do not indicate why an offset was not allowed.

In *Melamed v. Lake County Nat'l Bank,* 727 F.2d 1399 (6th Cir.1984), the court "recognized that set-offs are generally favored, but are not automatically permitted." *Id.* at 1404. The *Melamed* court further noted that the trial court's decision regarding whether to allow a set-off "will not be set aside unless found to constitute a clear abuse of discretion." *Id.* (citation omitted).

Two bankruptcy cases dealing with PACA trust issues bear on this issue though neither is on point. In *In re Super Spud, Inc.,* 77 B.R. 930 (Bankr.M.D.Fla. 1987), the court held that the bankruptcy trustee could not be compensated from the PACA trust fund for collecting the PACA receivables:

> The better view, and the one to which this court will subscribe, is that PACA trust beneficiaries, such as plaintiff in this case, take complete priority in payment as to all the assets of the debtor, ahead of the claims of creditors who have valid security interests, ahead of the administrative costs and expenses incurred in this court, and ahead of all other priority and general creditors.

*Id.* at 932 (citations omitted).

The other case is *In re United Fruit and Produce Co.,* 119 B.R. 10 (Bankr.D.Conn. 1990). There, the court rejected the reasoning of the *Super Spud* court and allowed the bankruptcy trustee to be compensated out of the PACA trust fund moneys:

> PACA contains no mechanism for administering and distributing trust assets. As the present case exemplifies, administration will frequently be required. The

bankruptcy trustee of the debtor's estate has rendered substantial services in collecting the PACA receivable for the benefit of the PACA beneficiaries and in contesting Allied's claim that it is entitled to a priority payment from this asset. Further, the trustee has an obligation to examine all claims made to share in the receivable proceeds. The non-PACA creditors of this estate should not pay for these services and the trustee should not be forced to donate them.

*Id.* at 13. The court thus held that the bankruptcy trustee could be compensated from the PACA trust for his efforts in collecting and distributing the PACA moneys. *Id.*

 In our view, the *United Fruit* rule is the better rule. When a bankruptcy trustee collects receivables and those moneys are subsequently turned over to PACA claimants, it should be allowed to offset its collection costs. The Bank here collected the receivables before they became stale. This undoubtedly resulted in a higher recovery than if the receivables had not been promptly collected. To deny the Bank any recovery would be unfair to the Bank and provide a windfall to the PACA claimants. Thus, the court should have allowed the Bank an offset for the collection costs.

We note, however, that the amount of the offset should be limited to the "hard" costs of collection such as outside attorney's fees and expenses that were necessary to the collection effort. The Bank is not entitled to offset in-house counsel time or time for other Bank employees. For instance, the Bank claims that it should be compensated for 452 hours of "officer time" at $100.00 per hour. Apt.E.R. 257. Such overhead expenses are not recoverable. The same applies to the 612 hours of "non-officer time" it seeks to offset. Apt. E.R. 255–256. The trial court should consider which of the other expenses claimed by the Bank were actual and necessary to the Bank's collection efforts. *See* Apt.E.R. 254. We remand for a determination of the appropriate amount of offset in favor of the Bank.

### 5. Attorney's Fees

 The Committee appeals the trial court's decision not to award attorney's fees. The Committee asserts that the equities of the case justify such an award in light of the Bank's vigorous litigation tactics throughout the proceedings. The Bank responds (1) that because there is no statutory basis for awarding fees, Congress did not intend that PACA claimants receive fees; and (2) that it did not "draw out these proceedings" thereby justifying an award of fees on equitable grounds.

We agree with the Bank. The American rule is that the parties bear their own attorney's fees. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). There is no provision in PACA for an award of attorney's fees against a losing party and the Bank's conduct does not justify an award of fees as a sanction. Although the Bank acted in its own interest throughout these proceedings, it had no obligation to do otherwise. Accordingly, we affirm the trial court's decision not to award fees to the Committee.

### CONCLUSION

We affirm the trial court's holdings that it had jurisdiction to determine the adversary proceeding filed by the Committee and that the Committee was entitled to summary judgment. We also affirm the court's decision to award prejudgment interest and to deny the Committee's request for attorney's fees. However, we remand to allow the court to determine the amount of offset the Bank should be allowed.