**In re UNITED FRUIT & VEGETABLE, INC., Debtor.**

**Eric C. RAJALA, Trustee, Plaintiff,**

**v.**

**GUARANTY BANK & TRUST, Defendant.**

Bankruptcy No. 93–21394–7.
Adv. No. 94–6077.

United States Bankruptcy Court,
D. Kansas.

Jan. 12, 1996.

Eric C. Rajala, Overland Park, Kansas, for Plaintiff/Trustee.

Ervin G. Johnston of Johnston, Ballweg & Tuley, L.C., Overland Park, Kansas, for Defendant Guaranty Bank & Trust.

### MEMORANDUM OPINION[1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

This dispute centers on the bankruptcy court's power to hear and determine competing rights to a statutory trust. Congress created the trust by amending the Perishable Agricultural Commodities Act ("PACA"), a statute that has regulated merchants, dealers, and brokers of perishable commodities in interstate commerce since its enactment in 1930.[2] PACA defines dealers as wholesale buyers and sellers of perishable commodities.

Produce dealers, like most businesses, finance their operations with borrowed money, granting their lenders floating liens on operating assets—inventories, accounts receivable, and the proceeds thereof. Suppliers sell to dealers nationwide on short-term credit. If a dealer who has granted a blanket lien on operating assets fails to pay a supplier, the lien can thwart the supplier's effort to collect from the dealer's assets. Having decided that this situation threatened the nationwide system of commerce in commodities, Congress corrected the problem in 1984 by amending PACA. The amendment reverses the priority scheme by creating a statutory trust in favor of unpaid suppliers. Now when dealers receive purchased produce, they hold it and its proceeds in trust for unpaid suppliers. If suppliers are not timely paid, they can qualify to share in the trust by giving written notice to the dealer and the Secretary of Agriculture. All qualified suppliers are entitled to share pro rata in the trust res before a lender's blanket lien is recognized. *In re Poulos, Inc.*, 947 F.2d 1351 (9th Cir.1991).

The Chapter 7 debtor, United Fruit & Vegetable, Inc. ("UF & V") is a licensed dealer under PACA. The proceeds of its produce inventory and accounts, which constitute the PACA trust res, are in a bank account in the name of the debtor at Guaranty Bank and Trust ("Guaranty").

Eric Rajala is UF & V's Chapter 7 trustee. In this adversary proceeding, he has sued Guaranty on behalf of several PACA suppliers who hold rights in the trust. Guaranty has defended by asserting that the account is covered by its lien securing a loan to UF & V. Thus, the contested trust rights are those of the debtor's lender, Guaranty, and qualified PACA suppliers. The jurisdictional question arises because under general

---

1. Eric C. Rajala appears for the plaintiff/trustee. The defendant, Guaranty Bank & Trust, appears by its attorney, Ervin G. Johnston of Johnston, Ballweg & Tuley, L.C., Overland Park, Kansas. There are no other appearances.

2. 7 U.S.C. § 499a, *et seq.*

case law and the stipulations, the PACA trust is not property of the bankruptcy estate.

I

In 1991, Guaranty loaned UF & V a total of $300,000 on two promissory notes. To collateralize the loans, UF & V granted Guaranty a blanket lien on its inventory and accounts. Plaintiff concedes that Guaranty holds a valid security interest in the proceeds of all UF & V's agricultural inventory,[3] but he contends that PACA trust beneficiaries hold superior rights to the proceeds.

On July 19, 1993, UF & V became a debtor-in-possession under Chapter 11. While the company operated as a debtor-in-possession, UF & V's counsel received a letter from the Fruit and Vegetable Division of the United States Department of Agriculture on the subject of the PACA trust covering the proceeds of UF & V's inventory and accounts.[4] The letter, dated October 28, 1993, informed UF & V that 26 of its suppliers had filed statutory notices with the Division, and presumably the debtor, to preserve their trust benefits totaling $805,326.17. Having reviewed the notices, the Fruit and Vegetable Division opined that, absent valid defenses, 20 unpaid creditors holding $409,736.19 in claims "qualified" to share in the PACA trust res. Attachments to the letter reflect the dates the suppliers furnished produce, and from the dates given, it appears that UF & V received the produce between June of 1992 and June of 1993, just before it filed for Chapter 11 on July 19, 1993. For purposes of this decision at least, the parties do not dispute the letter's contents.[5]

On December 21, 1993, while still operating under Chapter 11, UF & V opened bank account no. 76554 at Guaranty and deposited the proceeds of its accounts receivable. It made the last deposit to the account on January 27, 1993, just one day before the Chapter 11 case was converted to Chapter 7. When the Chapter 11 conversion occurred on January 28, 1994, the account balance was $101,-215.46.[6] Guaranty has since frozen the deposit account, claiming it as collateral.

Eric Rajala was appointed interim trustee on February 7, 1994. On June 29, 1995, he initiated this adversary proceeding under § 542 for turnover of the deposit account. Paragraph five of his complaint avers that the trust res is not property of the bankruptcy estate. Guaranty's answer concedes the averment, then suggests that since the trustee has admitted the trust res is not bankruptcy estate property, this Court lacks core jurisdiction to hear and determine the proceeding.

To pursue its theory of non-core jurisdiction, Guaranty moved for summary judgment of dismissal.[7] Rajala responded with his own motion for summary judgment, contending that the Court had core jurisdiction and denying the priority of Guaranty's security interest against the claims of the PACA trust beneficiaries. Both motions agree that there are no genuine issues of material fact.

II

To support his position that this proceeding is core, the trustee points to several decisions in which bankruptcy courts have taken jurisdiction over PACA trust issues. The first such decision is *In re Fresh Ap-*

---

3. Paragraph 1 of Rajala's Memorandum in Opposition to Defendant's Motion for Summary Judgment admits paragraph 8 of Guaranty's Memorandum in Support alleging the perfected security interest.

4. The USDA letter was mentioned in the motions for summary judgment but was actually filed in another proceeding in the case.

5. But, there could be later disputes about the eligibility of PACA suppliers to share in the trust. As the case annotations to 7 U.S.C. § 499(c) show, a supplier must satisfy several requirements to share in the trust res.

6. But the account balance has grown with interest. *Gullo Produce Co., Inc. v. A.C. Jordan Produce Co., Inc.,* 751 F.Supp. 64 (W.D.Pa.1990) (Sellers of fresh fruits and vegetables were entitled to interest on amounts due them from due date on every invoice to date of order establishing trust at rate of 6% annually, and were subsequently entitled to postjudgment interest at prevailing rate).

7. Guaranty's motion also advanced several theories supporting the enforceability of its security interest against the claims of the PACA creditors and conceded there were no genuine issues of disputed fact.

*proach, Inc.,* 51 B.R. 412 (Bankr.N.D.Tex. 1985). Although not cited by the parties, there is an earlier reported decision in the same case—*In re Fresh Approach, Inc.,* 48 B.R. 926 (Bankr.N.D.Tex.1985)—that merits examination as an aid to understanding the later case.

The factual statement in the first *Fresh Approach* opinion reveals that before filing for Chapter 11, the debtor purchased agricultural produce from Standard Fruit & Vegetable ("SF & V"), but failed to pay on time. Fearing that its unsecured claim would be trumped by Fresh Approach's secured creditors, SF & V sent the notices required to qualify as a PACA trust beneficiary. After Fresh Approach filed bankruptcy, SF & V moved for stay relief and asked that the debtor be required to relinquish possession of the produce.

The court decided that the recent amendment creating PACA trusts applied to the case. Then it concluded that the produce inventory was not property of the bankruptcy estate, albeit Fresh Approach possessed it. Finally, the court stated that Fresh Approach held the produce in trust for PACA trust beneficiaries such as SF & V. However, since the amount of SF & V's claim against the PACA trust was disputed, the court decided to resolve the dispute.

This proceeding to determine the amount of SF & V's claim against the PACA trust, set the stage for the second *Fresh Approach* opinion. In this proceeding, the debtor contested core jurisdiction by filing a motion for mandatory withdrawal of reference under 28 U.S.C. § 157(d). *In re Fresh Approach, Inc.,* 51 B.R. 412 (Bankr.N.D.Tex.1985). The bankruptcy judge overruled the motion.

He found there was core jurisdiction because: (1) he was adjusting the debtor-creditor relationship; (2) the proceedings affected the liquidation of assets of the estate;[8] and (3) the debtor held "legal title" to the produce under § 541(d). For his primary reason, the judge offered:

> It should be obvious that the present proceeding is one which adjusts the debtor-creditor relationship, and which is therefore a core proceeding under the foregoing provision [28 U.S.C. § 157(b)(2)(O)].

*Id.* at 418.

■ Yes, the court was obviously dealing with a debtor-creditor relationship—SF & V was a creditor and the PACA trust was its potential debtor. But that relationship did not involve a claim against property of the bankruptcy estate. Rather, the debtor-creditor relationship being adjusted involved private rights to the PACA trust. Bankruptcy judges can adjust only those debtor-creditor relationships that involve claims against the bankruptcy estate or those that the Code brings into the bankruptcy process by specific provision.[9] So far as this Court is aware, there is no Code section that would authorize meddling with this particular debtor-creditor relationship. If bankruptcy judges were free to hear and determine *any* debtor-creditor relationship, they could adjudicate simple contract actions between parties who have no connection to the bankruptcy case whatsoever, a proposition the United States Supreme Court rejected in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

*Fresh Approach*'s reasoning that it had core jurisdiction because property of the estate was being liquidated and because the debtor held a legal interest under § 541(d) was also obviously incorrect. No bankruptcy estate assets were being liquidated in the dispute, and the equitable interest in the trust was not property of the bankruptcy estate. All the estate had was valueless legal title and possession. No reason was given why holding legal title gave the court jurisdiction when it could not control the beneficial interest. The debtor held the trust res just like any other party with fortuitous possession: as a PACA trustee for all qualified beneficiaries. The beneficiaries could have

---

8. Paradoxically, the court said the debtor could not use the trust assets in its plan of reorganization because they were not property of the estate.

9. For example, § 523 of the Code authorizes the court to adjust a debtor-creditor relationship in a dischargeability determination even when the creditor does not file a claim against the estate.

sued the debtor in district court for their ratable shares of the trust res.

The next decision cited by plaintiff is *Allied Grocers Co–Operative v. United Fruit & Produce Co., Inc. (Matter of United Fruit & Produce Co., Inc.),* 86 B.R. 14 (Bankr. D.Conn.1988). Here a creditor, Allied Grocers Co–Operative, Incorporated ("Allied"), sued the debtor, United Fruit & Produce Co., Inc., in state court for $26,303.35 and issued a prejudgment garnishment against Norwalk Co–Op, Inc. ("Norwalk"). Norwalk owed United Fruit & Produce $30,000. When other creditors initiated an involuntary Chapter 7 against United Fruit & Produce, Allied moved for stay relief to pursue its state court action against the assets in the hands of Norwalk. Allied claimed that the receivable due from Norwalk was an asset of a floating PACA trust and that, as a qualified PACA supplier, it could enforce its beneficial rights outside of bankruptcy.

Another PACA creditor, Del Monte Fresh Fruit Company ("Del Monte"), holding a $38,109.60 claim against the debtor, objected to Allied's motion for stay relief.[10] Del Monte said that the PACA funds were still subject to the bankruptcy court's control, even though the trust res was not bankruptcy estate property. Allied replied that the court had no jurisdiction over the non-bankruptcy estate funds and that the court should lift the stay. Denying the requested stay relief, the court said:

> I fail to see why the trustee should not collect PACA receivables and the bankruptcy court determine the rights of beneficiaries. The bankruptcy court, among all courts, state or federal, is the one endowed with the most powers to collect receivables from account debtors wherever located through the United States, to process the filing of claims, and to make any other

determinations appropriate for such proceedings.

86 B.R. at 16.

While this statement expresses a result that is judicially economic, it fails as a basis for core jurisdiction. The dispute was between two PACA creditors with private rights to share in the trust. In this sense, they were strangers to the bankruptcy case. While Allied and Del Monte may also have been creditors entitled to file claims against the bankruptcy estate, in this dispute they were each contesting rights to share in property that had no significant relationship to the bankruptcy estate. The dispute was simply not between creditors with competing claims to bankruptcy estate property. The debtor, United Fruit & Produce Co., merely held legal title to a receivable due from Norwalk, a title from which it could derive no benefit for the bankruptcy estate.

The last decision the trustee relies upon is *Bank of Los Angeles v. Official PACA Creditors' Committee (In re Southland + Keystone),* 132 B.R. 632 (9th Cir. BAP 1991). In December 1988, the Bank of Los Angeles loaned Southland + Keystone ("Southland") $500,000, and took a security interest in Southland's accounts receivable.[11] Southland defaulted and in March 1987, the Bank began seizing and liquidating its collateral. It collected $403,527.30 of accounts receivable from May to September 1987. This paid the Bank in full and left it holding a surplus from collections.

Meanwhile, on June 12, 1987, Southland filed Chapter 11. A committee of PACA creditors ("Committee") was formed in September 1989. On October 16, 1989, the Committee filed a complaint against Southland and the Bank of Los Angeles in the bankruptcy case seeking a declaration that the collected monies were PACA trust funds payable to the Committee. The Bank moved to dismiss for lack of jurisdiction, but the court

---

**10.** United Fruit & Produce had $172,856.30 in receivables that the PACA creditors claimed were within the PACA trust. PACA claims totaled $389,761.59.

**11.** The Bank of Los Angeles alleged that the USDA gave it assurances that even though

Southland was a commodity dealer, the Bank could obtain an enforceable security interest because Southland operated only intrastate rather than interstate; therefore it was not subject to PACA.

denied the motion, apparently because the Bank's answer had admitted jurisdiction.

Then, on June 20, 1990, the Committee moved for summary judgment, arguing that no genuine issue of material fact existed and that a PACA trust on the accounts held priority over the Bank's security interest. The court ruled in favor of the Committee. The Bank appealed to the 9th Circuit Bankruptcy Appellate Panel (BAP), arguing that the lower court had no core jurisdiction or related-to jurisdiction and that the action could only have been brought in the district court.

Before the BAP, the Bank argued that it had collected the receivables legally prepetition, that the debtor had no claim against the PACA estate, and that the PACA proceeds were outside the bankruptcy estate. According to the Bank, the controversy between it and the PACA Committee did not affect the bankruptcy estate sufficiently to give the court core or related-to jurisdiction. The BAP answered:

> First, that PACA proceeds are not property of the estate does not mean the bankruptcy court does not have jurisdiction to make that determination. Under Appellant's reasoning, any bankruptcy court order determining that assets are not property of the bankruptcy estate would be of no effect because the court would not have had jurisdiction to enter the order. Clearly, a determination of whether assets are property of a bankruptcy estate concerns administration of the estate.

132 B.R. at 638.

The BAP's statement misses the point. Certainly the Court possessed the power to decide whether or not property was within the bankruptcy estate. But having decided that the trust res was outside the estate, the court should have examined whether it had jurisdiction to proceed. The Bank was not saying that the bankruptcy court lacked the power to decide whether property was within or without the bankruptcy estate. Rather, it was saying that once the court decided the trust property was outside the bankruptcy estate, which the court did, the remainder of the proceeding was no longer at the core of or "related to" the case. Neither the estate nor its creditors were entitled to the trust proceeds. The Bank was suggesting that *vis-a-vis* the trust, no estate existed to administer and no debtor-creditor relationship relevant to bankruptcy existed to adjust.

On the question of core jurisdiction, the court limited its analysis to a statement from the second *Fresh Approach* decision commenting on the obvious:

> Moreover, in the cases cited by Appellant, the bankruptcy courts exercised jurisdiction over the determination of whether the proceeds and receivables at issue were PACA proceeds and therefore assets of the estate. *See Poulos*, 94 B.R. 648, 653 (not discussing jurisdictional issues); *Fresh Approach*, 51 B.R. at 417–418. The latter court discussed at length whether a PACA proceeding was a core proceeding and concluded: "It should be obvious that the present proceeding is one which adjusts the debtor-creditor relationship, and which is therefore a core proceeding under [section 157(b)(2)(0) ]."

132 B.R. at 638.

With this remark, the court took jurisdiction over a dispute between a bank holding trust funds and the beneficiaries of the trust. The proper parties plaintiff and defendant were all of the qualified PACA trust beneficiaries and the Bank, respectively. The bankruptcy estate had no role to play in this dispute. Under the express terms of the PACA statute, this was a suit that should have been filed in federal district court. 7 U.S.C. § 499e(c)(4).

### III

■ Notably, none of these opinions analyze core jurisdiction under the standards established by the authorities that have studied the problem. For a bankruptcy court to have core jurisdiction over a proceeding, i.e., to be authorized to hear and determine it, the proceeding must "arise under title 11" or "arise in a title 11 case." 28 U.S.C. § 157(b)(1). Those courts that have thoroughly considered the meaning of these legislative pronouncements conclude that a proceeding only "arises under title 11" if it *involves rights derived from a provision of*

the Bankruptcy Code. *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 96–97 (5th Cir. 1987); *Eastport Associates v. City of Los Angeles (In re Eastport Associates)*, 935 F.2d 1071, 1076 (9th Cir.1991); *Michigan Employment Sec. Comm. v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir.1991).

■ In deciding when a proceeding "arises in a title 11 case," the decisions have fashioned a *but for* test. Under this test, a proceeding "arises in a case" if, *by its nature, it can only occur in a bankruptcy case. Wood v. Wood (Matter of Wood)*, 825 F.2d 90 (5th Cir.1987); *Silverman v. General Railway Signal Co., General Railway Signal Co. v. City of New York (In re Leco Enterprises, Inc.)*, 144 B.R. 244 (S.D.N.Y.1992); *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155 (Bankr.E.D.N.Y.1986).

Neither of these tests were discussed in *Fresh Approach, United Fruit & Produce Co.*, or *Southland + Keystone*. None of those decisions attempted to relate a specific Bankruptcy Code section to their controversies as a ground for core jurisdiction. Neither did any of the decisions satisfy the "but for" test of "arising in" jurisdiction by demonstrating that the proceeding under consideration was, by its nature, a proceeding that could only occur in a bankruptcy case. All of the disputes fail the "but for" test since they all could have been taken to the district court under the express terms of the PACA statute. 7 U.S.C. § 499e(c)(4).

### IV

■ Mr. Rajala has conceded that all qualified PACA creditors should share the entire trust pro rata, and he has proposed to distribute the res to them if he gains possession of it.[12] However, other than to suggest that if he could distribute the PACA trust funds, he could determine PACA deficiency claims against the bankruptcy estate, he has failed to explain how his involvement would aid administration of the estate. While it is true that if he could make the trust distribution, he could determine the amount of PACA

deficiency claims against the bankruptcy estate, he has neglected to disclose whether there actually are other bankruptcy estate assets for him to administer or how by gaining possession of the PACA funds, he could administer those assets significantly better. The funds at issue are admittedly not property of the bankruptcy estate, and the trustee has failed to convince the Court that if he possessed them, he would advance the administration of the estate in any material way.

While the trustee claims to be adjusting the debtor-creditor relationship between the Bank and the PACA trust and its beneficiaries, that relationship is not one that makes any claim to a bankruptcy estate res. Rather, it is a relationship that makes claim to a trust res that is dehors the bankruptcy estate. It involves private rights that do not derive from any identified Bankruptcy Code section. Therefore, the parties' disputed rights should be resolved in the federal district court which has express jurisdiction under PACA. 7 U.S.C. § 499e(c)(4).

### V

Finally, assuming no core jurisdiction, this Court must decide whether it has "related to" jurisdiction. And that enquiry encompasses the further question of whether the proceeding is so remote from the bankruptcy case that it cannot be considered "related to" the case at all. In the latter event, this Court would have no subject matter jurisdiction over the proceeding, nor would the district court have "bankruptcy" subject matter jurisdiction. But since the district court does have independent federal question jurisdiction over the competing rights to the PACA trust funds, the latter question pales and is moot, unless the district court should decide to refer the proceeding back here. In any event, I cannot resist a comment.

■ For a bankruptcy judge to have "related to" jurisdiction over a proceeding, the outcome of the proceeding must affect the bankruptcy estate in some significant

---

12. Earlier in the case, however, he proposed a settlement that would have favored those PACA creditors who urged him to file this adversary over other PACA creditors. When the motion for approval of the settlement drew objections, he withdrew the motion.

way. "[T]he bankruptcy court lacks related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy." *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990). *See also Elscint, Inc. v. First Wisconsin Financial Corp. (Matter of Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir.1987) ( [A proceeding is sufficiently "related to a title 11 case" for purposes of satisfying the bankruptcy jurisdictional requirements if it] "affects the amount of property available for distribution or the allocation of property among creditors.")

This dispute is between the PACA trust creditors and Guaranty. So far as he has demonstrated, the Chapter 7 trustee, who purports to act as a PACA trustee rather than a bankruptcy trustee, has no beneficial stake in the deposited funds. Viewing the matter from the perspective of the cited cases analyzing "related to" jurisdiction, I conclude that the bankruptcy court has no subject matter jurisdiction over this dispute.

## VI

Guaranty's motion for summary judgment is sustained to the extent it questions the Court's core jurisdiction. The trustee's motion for summary judgment is denied to the extent it supports the Court's core jurisdiction. Since the district court has independent federal question jurisdiction over rights to the PACA trust, this proceeding is transferred to the district court for consideration. This opinion constitutes proposed findings of fact and conclusions of law in a non-core proceeding under Fed. R.Bankr.P. 9033.[13]

IT IS SO ORDERED.

---

**13.** The foregoing discussion shall constitute findings of fact and conclusions of law under Fed. R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).